# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Nina Y. Wang

Civil Action No. 22-cv-00878-NYW-MEH

MICHAEL CURRAN, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,

    Defendant.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant Progressive Direct Insurance Company's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion" or "Motion to Dismiss") [Doc. 30]. The Court has reviewed the Motion, the related briefing, and the applicable case law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons set forth herein, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On August 12, 2021, Plaintiff Michael Curran ("Plaintiff" or "Mr. Curran") was involved in an automobile collision that caused physical damage to his vehicle.[1] [Doc. 21 at ¶ 16]. At the time of the collision, Mr. Curran was insured through Defendant Progressive Direct Insurance Company ("Defendant" or "Progressive Direct"). [*Id.*]. Progressive Direct declared Mr. Curran's

---

[1] This action was originally filed by Plaintiff Hersey Banks ("Plaintiff Banks") based on an automobile collision on or about October 1, 2018. [Doc. 1]. Mr. Curran was substituted for Plaintiff Banks as the named plaintiff in the First Amended Complaint filed on May 2, 2022. [Doc. 9].

vehicle to be a total loss.  [*Id.* at ¶¶ 17–18].  Pursuant to Mr. Curran's insurance policy (the "Policy"), Progressive Direct purported to pay Mr. Curran the actual cash value ("ACV") of his total loss vehicle.  [*Id.* at ¶¶ 2, 18].

In this lawsuit, Mr. Curran challenges Progressive Direct's process by which it calculates the ACV of a total loss vehicle.  Plaintiff alleges that when Defendant calculates valuations and claim payments, it "systemically employs a routine 'total loss settlement process'" that "involves obtaining a 'Vehicle Valuation Report' from Mitchell [International, Inc.] and relying upon the valuation provided by Mitchell as the ACV amount owed under the policy." [*Id.* at ¶¶ 1, 19].  The Mitchell Vehicle Valuation Reports purport to contain values for comparable vehicles for sale in the insured's geographic area, which are used to compute a valuation for the total loss vehicle.  [*Id.* at ¶ 20].  The Valuation Reports then adjust the advertised sale prices of the comparable vehicles to account for differences in equipment, mileage, and vehicle configuration.  [*Id.*].[2]  The Valuation Reports also apply "Projected Sold Adjustments," which are "adjustment[s] to reflect consumer purchasing behavior (negotiating a different price than the listed price)," to the comparable vehicles.  [*Id.* at ¶¶ 21–22].

Mr. Curran alleges that the Projected Sold Adjustments do not reflect market realities and instead are contrary to customary automobile dealer practices and inventory management.  [*Id.* at ¶ 23].  Specifically, Plaintiff alleges that previously, dealerships would price vehicles above market value to allow for negotiation, in the hopes of securing higher profits from buyers who were poor negotiators.  [*Id.* at ¶ 24].  But now, Plaintiff alleges, the "intense competition" in the age of "Internet pricing and comparison shopping" causes dealerships to no longer employ this practice; instead, dealers now "use sophisticated pricing software . . . and now appraise vehicles before

---

[2] Mr. Curran does not challenge these types of adjustments.  *See* [Doc. 21 at ¶ 28].

2

acquiring them to price them to market and do not negotiate from that price." [*Id.* at ¶¶ 23, 25]. For this reason, Mr. Curran asserts that "a negotiated discount off the cash price is highly atypical and is not proper to include in determining [the] ACV" of a total loss vehicle. [*Id.* at ¶ 27]. Mr. Curran alleges that the Projected Sold Adjustments are "contrary to proper appraisal methodologies for determining ACV" because they "permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections." [*Id.* at ¶ 28]. Furthermore, he asserts that Progressive Direct

> thumbs the scale [against insureds] by discarding vast amounts of relevant data that contradict any application of a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the "sales price" but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

[*Id.* at ¶ 29]. Mr. Curran also alleges that Progressive Direct excludes certain transactions from the calculation of Projected Sold Adjustments—such as transactions in which the sold price was greater than the list price—and that it has done so "[w]ithout having performed any investigation or study" into market realities. [*Id.* at ¶¶ 30–34]. And finally, Plaintiff alleges that Defendant's use of Projected Sold Adjustments is arbitrary because Defendant does not apply these adjustments in the states of California or Washington. [*Id.* at ¶ 47].

Defendant applied the Projected Sold Adjustments to Plaintiff's Valuation Report. [*Id.* at ¶ 19]. For Mr. Curran specifically, Projected Sold Adjustments "in the amounts of -$1,302.00, -$1,294.00, and -$1,485.00 . . . were applied to each of the three comparable vehicles" on his Valuation Report. [*Id.* at ¶ 21].[3] Mr. Curran alleges that "were it not for this deceptive and

---

[3] Plaintiff alleges that the Reports "make a further adjustment <u>to each loss vehicle</u> called a 'Projected Sold Adjustment.'  For Plaintiff, Projected Sold Adjustments in the amounts of -$1,302.00, -$1,294.00, and - $1,485.00 respectively, <u>were applied to each of the three comparable vehicles</u>." [Doc. 21 at ¶ 21 (emphasis added)]. It is thus unclear from the Amended Complaint

3

improper adjustment, the payment of ACV by Defendant would have been $1,360.33 higher, before adding the related increase in payments for applicable sales taxes." [*Id.* at ¶ 49].

This class action lawsuit is brought on behalf of the following proposed class:

> All Colorado citizens insured by Progressive [Direct] who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

[*Id.* at ¶ 50]. Plaintiff asserts the following claims on behalf of the class: (1) breach of contract ("Claim One"); (2) bad faith breach of an insurance contract ("Claim Two"); and (3) a declaratory judgment claim seeking a declaration that "in paying total loss claims with first-party insureds, it is a breach of the insurance contract . . . for Progressive [Direct] to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous Projected Sold Adjustments" and that "Progressive [Direct]'s application of unfounded Projected Sold Adjustments results in a valuation of less than the ACV Progressive [Direct] is required under its insurance contracts to pay insureds" ("Claim Three"). [*Id.* at 14–17].

Progressive Direct filed its Motion to Dismiss on August 5, 2022. [Doc. 30]. It argues that each of Plaintiff's three claims should be dismissed for failure to state a claim under Rule 12(b)(6). First, it argues that Mr. Curran fails to state a cognizable breach of contract claim because he does not allege that he suffered any damages arising from any purported breach. [*Id.* at 5–7]. Next, it

---

whether the Projected Sold Adjustments are applied to the loss vehicle, to the comparable vehicles, or both. However, Plaintiff has provided a copy of his Valuation Report, *see* [Doc. 1-1], which the Court can properly consider at this juncture. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (a court may consider documents attached to or referenced in the operative complaint if they are central to the plaintiff's claims and indisputably authentic). The Court notes that, in Plaintiff's Valuation Report, the Projected Sold Adjustments have been made to the comparable vehicles. *See* [Doc. 21-2 at 5, 6, 7].

4

contends that Mr. Curran's bad faith claim should be dismissed because Plaintiff's allegations in support of the claim are generic, conclusory, and insufficient to state a cognizable claim. [*Id.* at 7–9]. In the alternative, Progressive Direct maintains that Plaintiff's bad faith claim is preempted by Colorado's Total Loss Statute, Colo. Rev. Stat. § 10-4-639(3). [*Id.* at 9–12]. And lastly, Progressive Direct argues that Plaintiff lacks standing to bring his declaratory judgment claim, which Progressive Direct also contends is duplicative of Plaintiff's other claims. [*Id.* at 12–14]. Mr. Curran disagrees and maintains that he has plausibly alleged all of his claims. *See generally* [Doc. 35]. Since completion of the briefing on the Motion to Dismiss, Mr. Curran has submitted seven Notices of Supplemental Authorities, directing the Court to eight opinions denying motions to dismiss in cases that, according to Plaintiff, involve allegations that are "materially indistinguishable" from the allegations in this case. *See* [Doc. 43; Doc. 44; Doc. 45; Doc. 46; Doc. 47; Doc. 48; Doc. 49].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope

of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I. Breach of Contract

To state a breach of contract claim under Colorado law, a plaintiff must allege facts establishing: "(1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) damages." *Lawson v. Heartland Payment Sys., LLC*, 548 F. Supp. 3d 1085, 1095 (D. Colo. 2020). Progressive Direct challenges Mr. Curran's breach of contract claim on the fourth element, arguing that Mr. Curran fails to state a breach of contract claim because he "has failed to plead any basis for his alleged damages under the Policy." [Doc. 30 at 6]. Namely, Progressive Direct contends that Mr. Curran's breach of contract claim should be dismissed because he raises only "conclusory" and "barebones assertions that the ACV of his vehicle could have been '1,360.33 higher,' and that his damages are 'at least $485.86.'" [*Id.* (citations omitted)]. According to Progressive Direct, Mr. Curran's allegations are deficient because he "has not identified the ACV of his total-loss vehicle, the amount necessary to replace his total-loss vehicle (or that he even attempted to do so), . . . or even how much Progressive Direct paid on the claim." [*Id.*]. Mr. Curran disagrees, arguing that his allegations are sufficient to state a claim for breach of contract because he has alleged that Progressive "undercalculated the ACV [of his total loss vehicle] by $1,360.33, meaning that it

6

underpaid Plaintiff by $1,360.33." [Doc. 35 at 8]. He states that this amount is "the precise amount" that he alleges he was underpaid. [*Id.*].

The Court respectively agrees with Mr. Curran that he has, at this stage in the proceedings, plausibly alleged damages stemming from a breach of the insurance contract. He alleges that, under the applicable insurance Policy, Defendant was obligated to pay him the ACV of his total loss vehicle. [Doc. 21 at ¶ 2]. But he asserts that Progressive Direct employs a practice "of undervaluing comparable and total loss vehicles when paying automobile total loss claims through arbitrary, unsupported, and unjustified adjustments, which benefits the insurer at the expense of the insured," [*id.* at ¶ 10], and does so by using Projected Sold Adjustments that "do not reflect market realities" and instead "run contrary to customary automobile dealer practices." [*Id.* at ¶ 23]. And finally, he alleges that for his vehicle specifically, Progressive Direct improperly applied Projected Sold Adjustments in the amounts of -$1,302.00, -$1,294.00, and -$1,485.00 to the comparable vehicles, and if it were not for Defendant's "deceptive and improper" use of the Projected Sold Adjustments, the ACV payment for his vehicle "would have been $1,360.33 higher, before adding the related increase in payments for applicable sales taxes." [*Id.* at ¶¶ 21, 49].

A number of courts throughout the country have concluded that similar allegations—even where the plaintiff did not allege specifically what he or she believed to be the actual ACV of their total loss vehicle—are sufficient to plausibly state a breach of contract claim. *See, e.g.*, *Watson v. Progressive Direct Ins. Co.*, No. CV 5:22-203-DCR, 2022 WL 18027628, at *8 (E.D. Ky. Dec. 30, 2022) ("[Plaintiff] satisfied Rule 12(b)(6)'s pleading requirements by stating that she suffered $904.33 in damages: the amount by which Progressive reduced her settlement offer after applying the PSA. . . . Contrary to Progressive's assertions, Watson need not state how much her car was worth or how much she believed she was owed at this stage of the litigation."); *Grady v.*

*Progressive Direct Ins. Co.*, --- F. Supp. 3d ----, No. 22-cv-866 (NEB/TNL), 2022 WL 18494898, at *6 (D. Minn. Nov. 30, 2022) (denying motion to dismiss on almost identical allegations to those raised by Plaintiff here and rejecting Defendant's argument that the plaintiff "must allege how much she thinks her car was worth and that Progressive Direct paid her less than that amount").[4]

Insofar as Defendant takes issue with Plaintiff's failure to allege precise valuation numbers, those numbers "will become more precise through the discovery process." *Petri v. Drive New Jersey Ins. Co.*, No. 1:21-cv-20510, 2022 WL 4483437, at *5 (D.N.J. Sept. 26, 2022); *see also Grady*, 2022 WL 18494898, at *6 ("Had Progressive Direct not applied those PSAs to the listed cars, Grady's ACV payment allegedly would have been $499.80 higher.  Discovery may reveal that number to be inaccurate.  But at the motion-to-dismiss stage, Grady has plausibly alleged that she was injured.") (citations omitted).  To be sure, while Mr. Curran's allegations "could have been more precise," *see Petri*, 2022 WL 4483437, at *5, they are sufficient to "ensure that [Defendant] is placed on notice of [its] alleged misconduct sufficient to prepare an appropriate defense," *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011), and are sufficient to survive the Motion to Dismiss.  Accordingly, the Motion to Dismiss is **DENIED** with respect to the breach of contract claim.

---

[4] *See also, e.g.*, *Holmes v. Progressive Universal Ins. Co.*, No. 22 C 894, 2023 WL 130477, at *8 (N.D. Ill. Jan. 9, 2023) ("Plaintiffs allege they would have been $445.00 and $374.80 better off, respectively, but-for the application of a PSA. . . . Plaintiffs have plausibly alleged an injury sufficient to survive Progressive's motion to dismiss."); *Petri v. Drive New Jersey Ins. Co.*, No. 1:21-cv-20510, 2022 WL 4483437, at *5 (D.N.J. Sept. 26, 2022) ("Defendants were obligated to pay a yet-to-be-determined amount of money but paid less than that amount.  These allegations are about as close to a contract law casebook's definition of breach as one could get."); *Volino v. Progressive Cas. Ins. Co.*, No. 21 CIV. 6243 (LGS), 2022 WL 5242894, at *2 (S.D.N.Y. Oct. 6, 2022) (rejecting argument raised by Defendant here, on nearly identical allegations to those asserted here, and concluding that the complaint sufficiently alleged a breach of contract).

## II. Common Law Bad Faith

Claim Two is captioned as asserting a breach of the covenant of good faith and fair dealing, *see* [Doc. 21 at 14], which the Court construes as a common law bad faith claim. "Every contract in Colorado contains an implied duty of good faith and fair dealing," and typically, a breach of this duty gives rise only to a breach of contract claim. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004). However, "[d]ue to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Id.* (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). This tort action is commonly referred to as a common law claim for bad faith breach of an insurance contract. *See, e.g.*, *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011).

Progressive Direct raises two arguments challenging Mr. Curran's bad faith claim. It first contends that Mr. Curran fails to allege sufficient facts to state a bad faith claim. [Doc. 30 at 7]. In the alternative, it argues that Plaintiff's bad faith claim is precluded by Colorado's Total Loss Statute. [*Id.* at 9]. The Court addresses these arguments in turn.

### A. Failure to State a Claim

To state a common law bad faith claim, the insured must allege facts demonstrating "that (1) the insurer's conduct was unreasonable, and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable." *Kisselman*, 292 P.3d at 970 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985)). "[T]he tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative," *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997), and "[t]he reasonableness of the insurer's conduct

must be determined objectively and is based on proof of industry standards." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quotation omitted).

Progressive Direct argues that Mr. Curran fails to state a claim because he "does not allege he disputed the [Projected Sold Adjustments] at the time of the settlement [of his claim], rejected Progressive Direct's offer, or that Progressive Direct failed to consider additional information he submitted regarding the value of his loss vehicle." [Doc. 30 at 9]. According to Defendant, "[w]ithout these allegations, there can be no plausible inference that Progressive Direct acted unreasonably, and certainly no inference that Progressive Direct had knowledge of or reckless disregard that its valuation was unreasonable." [*Id.* (quotation omitted)].

The Court respectfully disagrees. Progressive Direct cites no legal authority establishing that Mr. Curran *must* allege that Defendant failed to consider additional information he submitted or that he disputed Progressive Direct's use of the Projected Sold Adjustments at the time of the settlement. *See generally* [*id.*]. Indeed, Progressive Direct cites no case law, and this Court independently found none, that indicates that *Mr. Curran's conduct*—rather than *Progressive Direct's*—is the proper focus of a bad faith claim. While the examples provided by Defendant may be *some* bases upon which a plaintiff can base a bad faith claim, they are not the *exclusive* bases for a common law claim. *See, e.g.*, Colo. Rev. Stat. § 10-3-1104(h) (the Unfair Claims Settlement Practices Act providing a non-exhaustive list of unfair claim settlement practices).[5] For example, an insurer may engage in bad faith if it "[m]isrepresent[s] pertinent facts . . . relating to coverages at issue," Colo. Rev. Stat. § 10-3-1104(h)(I), knowingly relies on incomplete or

---

[5] "In determining whether an insurer's delay in paying benefits or its denial of benefits was reasonable, the jury may consider evidence that the insurer's conduct violated the [Unfair Claims Settlement Practices Act, § 10-3-1104]." *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 971 (Colo. App. 1996).

inaccurate information, *see Ridgeview Ctr. LLC v. Canopius US Ins. Inc.*, No. 18-cv-02850-REB-MEH, 2019 WL 2137394, at *4 (D. Colo. May 16, 2019), *report and recommendation adopted*, 2019 WL 13149200 (D. Colo. Sept. 17, 2019), or fails to conduct a reasonable investigation based on all available information. *See Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004).

Again, here, Mr. Curran alleges that Defendant's use of Projected Sold Adjustments does "not reflect market realities" and runs "contrary to customary automobile dealer practices and inventory management." [Doc. 21 at ¶ 23]. He then provides specific examples of what he alleges to be automobile dealership practices, [*id.* at ¶¶ 23–27], and explains how the Projected Sold Adjustments run contrary to these standard appraisal practices. [*Id.* at ¶ 28]. Mr. Curran also alleges that Progressive Direct "discard[s] vast amounts of relevant data that contradict any application of a Projected Sold Adjustment and by failing to control for material variables" and excludes certain transactions from its Projected Sold Adjustments that may decrease the amount of the Projected Sold Adjustment. [*Id.* at ¶¶ 30–34]. Taking these facts as true, as it must, the Court concludes that Mr. Curran has plausibly alleged bad faith on the part of Progressive Direct. *See Bingman v. Safeco Ins. Co.*, No. 20-cv-03125-RMR-GPG, 2022 WL 2287539, at *7 (D. Colo. Feb. 6, 2022) (recommending that bad faith claim survive a motion to dismiss where the plaintiff alleged that the insurer "misused" pricing data and undervalued the plaintiff's loss despite knowing the prevailing competitive price in the relevant market), *report and recommendation adopted*, 2022 WL 2287508 (D. Colo. Mar. 31, 2022); *see also Grady*, 2022 WL 18494898, at *6–7.

B.  Colorado's Total Loss Statute

In the alternative, Progressive Direct argues that Colorado's Total Loss Statute, Colo. Rev. Stat. § 10-4-639, "precludes a bad-faith breach of insurance contract claim." [Doc. 30 at 9]. The statute provides:

> [a]n insurer shall establish a fair and consistent method for determining total loss of a motor vehicle.  Such method shall include consideration of unique characteristics of the motor vehicle and a credible source of valuation.  An insurer shall maintain a record of its methodology for determining total loss evaluation and provide such methodology to the commissioner upon request.  The commissioner may promulgate rules for the administration and enforcement of this subsection (3). An insurer may not use different credible sources of valuation only to determine the lowest amount payable for the total loss of the motor vehicle.

Colo. Rev. Stat. § 10-4-639(3).  In making this argument, Progressive Direct relies on a decision by this Court: *Ubel v. Progressive Direct Insurance Co.*, No. 20-cv-00204-RM-NYW, 2020 WL 9432929 (D. Colo. Oct. 22, 2020), *report and recommendation adopted*, 2020 WL 6701102 (D. Colo. Nov. 13, 2020).  In *Ubel*, this Court concluded that a bad faith claim—also asserted against Progressive Direct—was preempted by the Total Loss Statute.  *See Ubel*, 2020 WL 9432929, at *16–18.  Specifically, the plaintiff in *Ubel* alleged that Progressive Direct's valuation report relied on a "statistically invalid" downward "Condition Adjustment" and also generally used a "statistically invalid methodology."  *Id.* at *3.  At the motion-to-dismiss stage, Progressive Direct argued that the plaintiff could not raise a claim based on an alleged breach of statutory duty— namely, the duty set out in the Total Loss Statute—because "the Colorado Legislature created a comprehensive regulatory scheme governing the total loss valuation process," such that it was improper for the plaintiff to repackage his claim as an individual tort action.  *Id.* at *16 (quotation omitted).

In *Ubel*, this Court agreed with Progressive Direct.  Noting that the plaintiff had alleged that Progressive Direct had "a duty to its insureds to investigate and confirm the veracity and

12

validity of the valuation products it uses" and had "breached this duty by knowingly using a statistically invalid source for its total loss valuations," *id.* at *17 (quotations omitted), the Court determined that the plaintiff's bad faith claim was not based on an alleged breach of a contractual duty, but instead an "allege[d] violation of Progressive Direct's statutory duty under the Total Loss Statute because it [was] premised on the latter's alleged failure to use a credible (i.e., statistically valid) source of valuation to determine total loss claims." *Id.* Then, using the factors identified by the Colorado Supreme Court in *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992),[6] the Court "consider[ed] whether the Total Loss Statute preclude[d] [the plaintiff's] bad faith claim." *Ubel*, 2020 WL 9432929, at *17. Upon concluding that (1) the plaintiff was within the class of persons identified to benefit from the Total Loss Statute; (2) the Colorado Legislature intended for an administrative, rather than legislative, remedy for violations of the Total Loss Statute; and (3) it was inappropriate to infer a legislative intent to create a private civil remedy, the Court found that the Total Loss Statute "preclude[d] [the plaintiff's] bad faith claim premised on Progressive Direct's alleged breach of <u>its duty to use statistically valid valuation sources</u>." *Id.* at *18–19 (emphasis added). This Court recommended that Progressive Direct's motion to dismiss be granted with respect to the bad faith claim, *id.* at *19, *22, the parties in *Ubel* did not object, and the Honorable Raymond P. Moore adopted that recommendation. *See* 2020 WL 6701102, at *1.

---

[6] "In Colorado, to determine whether a private tort remedy is available for a defendant's violation of a statutory duty, the court considers three factors: (1) whether the plaintiff is within the class of persons intended to benefit from the legislation, (2) whether the legislature intended to create an implied private right of action, and (3) whether an implied civil remedy would be consistent with the purposes of the legislative scheme." *Ubel*, 2020 WL 9432929, at *17 (citing *Parfrey*, 830 P.2d at 911).

In his Response, Mr. Curran does not challenge the analysis or reasoning of this Court's decision in *Ubel*. Rather, he argues that *Ubel* is distinguishable from the instant matter. *See* [Doc. 35 at 10]. He suggests that *Ubel* "is completely different than Plaintiff's claims here" because here, "Plaintiff does not allege it is improper to use a comparable-vehicle methodology to determine the actual cash value of a totaled vehicle," but challenges only "Defendant's sole deviation from that otherwise acceptable methodology—applying an arbitrary adjustment that is contrary to appraisal standards and methodologies and runs contrary to the used-car industry's market pricing and inventory management practices." [*Id.* at 11]. He distinguishes this case from *Ubel*, arguing that because this Court in *Ubel* had concluded that there was no *contractual* duty that required Progressive Direct to use a statistically valid third-party valuation system, "the only source for an independent duty [in *Ubel*] to use a statistically valid source—if one does not arise from the contract itself—[was] the Total Loss [Statute]." [*Id.*]. Mr. Curran posits that this case is different from *Ubel* because here, he "is alleging that Progressive [Direct] is breaching its contractual duty by reducing the market value of insured vehicles through imposition of the made-up, false, and capricious PSA—and because Progressive [Direct] is doing so knowingly (or with reckless disregard), it is not only breaching the contract, but doing so in bad faith." [*Id.* at 12].

Upon review of the record before it, the Court respectfully disagrees with Defendant's contention that Plaintiff's bad faith claim should be dismissed at the pleading stage. Plaintiff alleges that his insurance Policy obligated Defendant to pay the ACV of his total loss vehicle. *See* [Doc. 21 at ¶ 3 (alleging that Progressive Direct "has a duty to pay . . . the ACV of a loss vehicle when adjusting total loss claims")]. The Policy requires Progressive Direct to pay "the actual cash value of the stolen or damage property at the time of the loss reduced by the applicable deductible."

*See* [Doc. 1-1 at 25, § 1(a)].[7] "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." [*Id.* at 26, § 2(g)].

The definition within the Policy does not include expressly include Projected Sold Adjustments or set out how market value is or should be calculated. *See* [*id.*]. But Plaintiff contends that Projected Sold Adjustments as applied by Progressive Direct are discretionary, i.e., Plaintiff alleges that the Projected Sold Adjustments are not applied by Defendant in states like California and Washington. [Doc. 21 at ¶ 47]. Plaintiff further alleges that, until July 2021, Defendant excluded from the calculation of the Projected Sold Adjustments all transactions in which the list price of a vehicle equaled the sold price and even after July 2021, Defendant still excludes some transactions in which the list price of a vehicle equals the sold price. [*Id.* at ¶¶ 30–31]. In addition, Defendant has excluded and continues to exclude from the calculation of the Projected Sold Adjustments all transactions in which the sold price of the vehicles is greater than the list price. [*Id.* at ¶ 32]. Plaintiff alleges that "[w]ithout having performed any investigation or study, Defendant simply assumes all such transactions are anomalies." [*Id.* at ¶ 33]. Thus, while the application of the Projected Sold Adjustments is intended to reflect "consumer purchasing behavior (negotiating a different price than the listed price)," [Doc. 21-2 at 8], Plaintiff contends that, in reality, it always results in a "significant downward adjustment" of the base value of the comparable vehicles and of the ACV paid to the insured. [Doc. 21 at ¶ 5].

While this Court recognizes the similarities between the allegations in this action and the ones in *Ubel*, the crux of Plaintiff's bad faith claim here does not arise from a duty that flows from the Total Loss Statute. Rather, Plaintiff alleges that Defendant failed to pay Plaintiff the ACV of

---

[7] The Court cites to the Policy as attached to the original Complaint, as the CM/ECF markings on the Policy attached to the operative Second Amended Complaint are illegible.

his total loss vehicle as it was contractually obligated to do, and justified doing so through "[i]ntentionally inventing and applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles." *See* [Doc. 21 at ¶ 69(a), (c)]. Specifically, Mr. Curran alleges that the use of Projected Sold Adjustments is contrary to the used car industry's market pricing and inventory management practices. [*Id.* at ¶¶ 1, 5, 22]. He further contends that the application of the Projected Sold Adjustment is discretionary and that Progressive Direct exercised that discretion unreasonably in fulfilling Defendant's obligations under the contract. [*Id.* at ¶¶ 1, 67-68]. Of course, Defendant may challenge whether Plaintiff can establish bad faith after having had the benefit of discovery in this case. But at this stage in the proceedings, the Court cannot conclude that dismissal is warranted on the current record. The Motion to Dismiss is **DENIED** with respect to the bad faith claim.

### III.  Declaratory Judgment

Finally, Progressive Direct argues that Plaintiff's declaratory judgment claim should be dismissed for (1) lack of standing and (2) failure to state a claim. [Doc. 30 at 12–14]. Defendant's first argument is dispositive and the Court limits its analysis accordingly.[8]

In Claim Three, Mr. Curran seeks a declaratory judgment that "in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Progressive [Direct] for Progressive [Direct] to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous Projected Sold Adjustments," and that Defendant's "application of unfounded Projected Sold Adjustments results in a valuation of less than the ACV

---

[8] Although the Motion to Dismiss is raised exclusively under Rule 12(b)(6), an argument asserting a lack of standing is appropriately raised under Rule 12(b)(1), as "[a] federal court does not have jurisdiction over a case if the plaintiff does not have standing." *United States v. Colo. Supreme Ct.*, 87 F.3d 1161, 1166 (10th Cir. 1996).

Progressive [Direct] is required under its insurance contracts to pay insureds." [Doc. 21 at ¶¶ 74, 77]. Progressive Direct contends that Mr. Curran lacks standing to seek such a declaratory judgment because he fails to allege facts establishing that he is at risk of suffering a certainly impending future injury. [Doc. 30 at 12–13]. In response, Mr. Curran argues that "[d]istrict courts have allowed plaintiffs to maintain declaratory judgment claims in materially similar suits alleging underpayment of actual cash value on total loss auto claims," [Doc. 35 at 13 (collecting cases)], and "Plaintiff therefore has standing to pursue the declaratory judgment claim alleged in the Second Amended Complaint." [*Id.*].

A plaintiff must establish Article III standing to bring each of his claims separately, *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), including claims for declaratory judgment. *See Bishop v. Smith*, 760 F.3d 1070, 1091 n.13 (10th Cir. 2014) ("Like any lawsuit, a declaratory-judgment action must meet Article III's standing criteria."). Article III standing requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original)). The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Id.* at 158 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (quotations omitted). But to "protect against a feared future event, the plaintiff must demonstrate that the probability of that future event

17

occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (quotation omitted) (cited favorably by *Jordan v. Sosa*, 654 F.3d 1012, 1032 (10th Cir. 2011)).  Plaintiff bears the burden of establishing the elements of standing.  *Lujan*, 504 U.S. at 561.

The Court agrees with Defendant that Plaintiff fails to establish his standing to bring his declaratory judgment claim.  At best, Mr. Curran alleges that Progressive Direct's "unlawful common policy and general business practice of applying Projected Sold Adjustments is ongoing." [Doc. 21 at ¶ 75 (emphasis added)].  But he does not allege facts showing a "certainly impending" injury or a "substantial risk" that he will suffer harm in the future.  For example, Mr. Curran does not allege that he remains insured through Progressive Direct; instead, he alleges that "[a]t all relevant times, Plaintiff was contracted with Progressive [Direct] for automobile insurance." [*Id.* at ¶ 11]; *see also* [*id.* at ¶ 16 ("At the time of the car wreck, Plaintiff was contracted with Progressive [Direct].")].  Nor does he allege any facts establishing a likelihood that he will suffer a total loss to his vehicle in the future, such that Progressive Direct, if he does remain insured through Defendant, will again be put in the position to determine the ACV of his vehicle.  *See generally* [*id.*].

Courts have concluded that plaintiffs in similar cases lacked standing to seek this type of declaratory relief.  *See, e.g.*, *Holmes v. Progressive Universal Ins. Co.*, No. 22 C 894, 2023 WL 130477, at *9 (N.D. Ill. Jan. 9, 2023) ("Although Plaintiffs allege that Progressive's practices regarding total-loss claims are 'ongoing,' and purport to seek 'prospective' relief, they have not demonstrated a substantial risk of harm in the future.") (citation omitted); *Grady*, 2022 WL 18494898, at *7; *Watson*, 2022 WL 18027628, at *11.

The Court agrees with this authority and concludes that, because Mr. Curran does not allege facts plausibly alleging a certainly impending future injury or a substantial risk that such harm will occur, he lacks standing to bring his declaratory judgment claim, and as a result, this Court lacks subject matter jurisdiction over Claim Three. The Motion to Dismiss is thus **GRANTED** with respect to Claim Three, and Claim Three is **DISMISSED without prejudice** for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (claims dismissed for lack of subject matter jurisdiction should be dismissed without prejudice).

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant Progressive Direct Insurance Company's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 30] is **GRANTED in part** and **DENIED in part**; and

(2) Plaintiff's declaratory judgment claim, Claim Three, is **DISMISSED without prejudice**.

DATED: March 21, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge