IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MICHAEL CURRAN, individually and on behalf
of all others similarly situated,

*Plaintiff*,

vs.

PROGRESSIVE DIRECT INSURANCE
COMPANY, an Ohio corporation,

*Defendant*.

CLASS ACTION

Case No. 1:22-cv-00878-RM

**PLAINTIFF'S REPLY IN SUPPORT OF THE
MOTION FOR CLASS CERTIFICATION**

## I.     INTRODUCTION

The evidence a named plaintiff utilizes is common to a Class if absent class members could rely on that evidence were they to bring an individual action. Plaintiff will present evidence that Progressive, by applying PSAs, did not determine ACV based on the market. Rather, Progressive manufactured a false "market" by excluding and manipulating the data underlying the PSA. Plaintiff will present evidence that (i) ACV is properly calculated by taking the average of list prices of comparable vehicles, adjusted for differences in equipment, mileage, and condition, (ii) the Mitchell Report without the PSA documents a reliable and sound individualized appraisal of ACV, and, thus, (iii) the Mitchell Report without the PSA is evidence of ACV for every Class member. Unquestionably, any Class member bringing an individual action could rely on the same evidence. As such—and as in eleven cases discussed herein where certification was granted in *very*

1

similar contexts, including three against Progressive on these same facts and record—Plaintiff's *prima facie* evidence is common to the Class.

Progressive argues that to establish liability class-wide, Plaintiff must present different evidence. Progressive is wrong but, more importantly, Plaintiff is not presenting such evidence *for his own claims*. Under Rule 23, the relevant question is whether absent class members can rely on the class representatives' evidence, not whether plaintiffs will prevail. Common proof will show Progressive thumbed the scale against its insureds by applying PSA deductions, and the remedy is to take the thumb off the scale and remove that lone line-item deduction. Plaintiff is confident he will prevail with this evidence, but that is a question for another day.

Nothing in the Opposition refutes Plaintiff's showing that common issues are likely to predominate in this litigation. Progressive's arguments rest on concocted issues that are irrelevant, wrong, or easily resolved during the claims administration process. As such, the Motion should be granted, consistent with *Volino*, *Brown*, *Drummond*, *Clippinger*, *Slade*, *Hicks*, *Stuart*, *Mitchell*, *Sampson*, *Shields*, and *Lewis*.

## II.     ARGUMENT

At the outset, it is notable that Progressive's appraiser has never seen the J.D. Power data, "do[es] not know how the PSA calculation is calculated," and is "not vouching for the methodology of the PSA deduction." Exh. 13 (Kinney Dep.) at 76:14-77, 80:1-3.[1] He merely thinks "conceptually it might be helpful." *Id*. at 80:4-7. Like all Progressive's witnesses, he has no criticisms of the other components of Mitchell's methodology. *Id*. at 74:13-15. And he confirmed that, at trial, the only dispute boils down to the "soundness of applying the PSA deduction." *Id*. at 74:16-75:4. Thus, there is no disagreement in the *evidence* that the predominating issue at trial will

---

[1] Exhs. 1-12 were attached to the Motion. Subsequent exhibits are attached hereto.

2

be whether Mitchell, either with (according to Progressive) or without (according to Plaintiff) the PSA is the proper ACV amount. Only Progressive's counsel, in unsworn arguments, suggest otherwise. Every court that has considered Progressive's arguments has rejected them.

**A. Numerous courts certified claims contesting a discrete element of an ACV calculation.**

Three courts addressing *identical* claims found them eminently suitable for class treatment. *Volino v. Progressive Cas. Ins. Co.*, 21 Civ. 6243 (LGS), 2023 U.S. Dist. LEXIS 44666 (S.D.N.Y. Mar. 16, 2023); *Brown, et al. v. Progressive Mountain Ins. Co., et al.*, 3:21-cv-175-TCB, 2023 U.S. Dist. LEXIS 136472 (N.D. Ga. Aug. 3, 2023); *Drummond v. Progressive Specialty Ins. Co.*, No. 21-4479, 2023 U.S. Dist. LEXIS 140205 (E.D. Pa. Aug. 11, 2023). After evaluating identical evidence, claims, and arguments, *Volino* explained "the critical common questions identified by Plaintiffs predominate over [any] individual inquiries" and methodically swatted away Progressive's arguments. *Id*. at *8-10. In *Brown*, the court agreed that whether the PSA is a valid element in calculating ACV is "subject to common proof…and 'the jury will either agree or not' with each side's position. Either way…'it applies equally to the Class.'" *Id.* at 20. And a court addressing essentially an identical case agreed that claims contesting an equivalent to the PSA (called a "typical negotiation" adjustment) and otherwise finding the valuation to constitute a vehicle's ACV was eminently suitable for class treatment. *Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02482-TLP-cgc, 2023 U.S. Dist. LEXIS 153813 (W.D. Tenn. Aug. 25, 2023).

Also, numerous courts have agreed class treatment is proper where insureds contest a discrete element of an ACV calculation and present evidence ACV can be calculated by excising that element. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 411 (5th Cir. 2017); *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 711 (5th Cir. 2020); *Shields v. State Farm Mutual Automobile Insurance Co.*, Case No. 6:19-cv-1359, 2022 WL 37347, at *8 (W.D. La. Jan. 3, 2022);

3

*Sampson v. United Services Automobile Association*, Case No. 6:19-cv-896, 2022 WL 1415652, at *8 (W.D. La. May 3, 2022); *Lewis v. Gov't Emples. Ins. Co.*, Civil No. 18-5111 (RBK/MJS), 2022 WL 819611 (D.N.J. Mar. 18, 2022); *Hicks v. State Farm*, 965 F.3d 452, 460–61 (6th Cir. 2020); *Stuart v. State Farm*, 910 F.3d 371, 375–76 (8th Cir. 2019). This case is no different.

    B.  **Plaintiffs identify common evidence that absent Class members could use to make a *prima facie* case, and Progressive's arguments are irrelevant to class certification.**

Evidence is common to a class if "each class member could have relied on [the evidence] to establish liability if he or she had brought an individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016). Calculating ACV requires first identifying the market value of a vehicle of the same year, make, and model. Then, any adjustments must be based on specific characteristics—mileage, condition, etc.—which determines the specific vehicle's ACV. The "central question" of liability is whether Progressive is considering a false, truncated, invented market "in breach of its contractual duty" to "determine" ACV based on the *actual* "market value" of the insured's vehicle. Motion at 15, 22 (citing *Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 980-81 (8th Cir. 2021)); Exh. 3 at 22. If Plaintiffs' representation of the market—dealerships price vehicles to market, vehicles typically sell for that market price particularly in cash transactions, and deviations from list price cannot reflexively be attributed to negotiations in cash transactions—is correct, then ACV is not being "determined by" by the market, but rather by Progressive's truncated, artificially lowered, and false "market."

Plaintiffs will present evidence Progressive, to invent support for the PSA, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ meaning ACV was not "determined by" the actual market value. Mot. at 7-9. Class members could rely on this evidence in individual actions. Plaintiffs will present additional evidence that the norm in the modern market is for dealers "not to inflate prices above market value[,]" *Smith*, 18 F.4th at 980-81, but to price

4

to market. Mot. at 5-6. Class members could rely on this evidence in an individual action. Plaintiffs will present empirical market evidence showing, consistent with ▮▮▮▮▮▮ and Felix's testimony, vehicles typically sell for list price, *id*. at 9-10, which Class members could rely on in individual actions. Plaintiffs will present evidence that, but for the PSA, Mitchell is a reliable method for appraising ACV based on market value, age, and condition. *Id*. at 6-7; *accord Slade*, 856 F.3d at 411. This is evidence on which any class member could rely. As Progressive's appraiser acknowledges, the dispute boils down to the "soundness of the PSA deduction." Exh. 13 at 74:16-75:4. "If the factfinder accepts Plaintiffs' evidence on the state of the market, then [] recalculating the valuation using Progressive's methodology without the PSA will accurately value each [] member's vehicle." *Volino*, 2023 U.S. Dist. LEXIS 44666, at **8-9; *see also Drummond*, 2023 U.S. Dist. LEXIS 140205, at *36; *Brown*, 2023 U.S. Dist. LEXIS 136472, at *24.

Rule 23 requires that named plaintiffs show common evidence can be used as evidence of an element in the litigation, not that they will prevail. *See, e.g.*, *id*., at *9 ("[T]hat the jury might not be persuaded by Plaintiffs' common proof does not mean Plaintiffs lack common proof."). Plaintiffs have done so. In response, Progressive contested predominance with two categories of arguments: (i) if common evidence establishes a *prima facie* case, individualized defenses will predominate; and (ii) Plaintiffs' evidence is insufficient to make a *prima facie* case. The former is without support, and the latter is both wrong and irrelevant.

1. **Progressive's attacks on Plaintiffs' experts are premature merits-based arguments about whether the opinions are persuasive without even filing a *Daubert* motion.**

At the outset, it is worth noting that much of Progressive's brief is spent attacking Plaintiffs' experts' testimony. Opp. at 12-15. The dog that did not bark, however, is Progressive's *Daubert* motions—it didn't file any. Presumably this is because Progressive filed *Daubert* motions on

5

multiple occasions, all of which were rejected. *See Drummond*, 2023 U.S. Dist. LEXIS 140205, at **19-20; *Volino*, 2023 U.S. Dist. LEXIS 44666, at *15; *see also Brown v. Progressive Mountain Insurance Company*, No. 3:21-cv-00175 (N.D. Ga. September 20, 2023); *see also Clippinger*, 2023 U.S. Dist. LEXIS 153813, at **12-16. Moreover, Progressive's misguided criticisms concern the merits of Plaintiffs' case, not class certification. Progressive attacks their testimony as incorrect, insufficiently sourced, or contrary to Progressive's expert testimony. But this concerns whether the testimony is persuasive, not whether it is common. If an absent class member brought an individual action and relied on Felix's or Merritt's testimony in making a prima facie case, their testimony may or may not persuade a jury. But there is no question absent class members *could rely on such testimony*. And for purposes of certification, the question is whether an absent class member can rely on evidence, not whether they would prevail based on that evidence.

In any event, Progressive is mischaracterizing the testimony. For example, Progressive claims Merritt does not have knowledge of the data on which the PSA is based, Opp. at 14, but this is a mischaracterization. Merritt understands the salient facts about the PSA, and based on his (correct) understanding, opines it is "not an appropriate basis for adjusting the list price" of comp vehicles because (1) it is not based on verified information about the specific comp vehicles at issue, (2) it does not account for factors unrelated to ACV that may impact the reported sales price (such as "trade ins, in-house financing, warranties, service plans, [and] special discounts"), and (3) it is calculated only after excluding vast amounts of transactions. Report at 6-7. Every court examining actual *Daubert* challenges to these opinions have held they would assist the trier of fact. Progressive's own expert does not rebut this and truly has no idea how the PSA is calculated. Kinney Dep. at 76:14-77, 80:1-3.

6

In sum, Progressive's attacks on Plaintiffs' experts are misguided, factually incorrect, and completely irrelevant to the appropriateness of class treatment.

### 2. Progressive's arguments concerning Plaintiffs' ability to establish liability are irrelevant to the appropriateness of class treatment.

Progressive briefly opposes Plaintiffs' ability to establish liability through common proof with two irrelevant and erroneous arguments. First, Progressive oddly argues Plaintiffs cannot establish liability on classwide basis because they cannot show that "none of the comparable vehicles to which PSAs were applied sold for less than list price" for each Class member. Opp. at 15. This is irrelevant because that is not Plaintiffs' theory of liability, and Plaintiffs are not introducing sales prices of the comparable vehicles in their own Reports. If Plaintiffs cannot establish liability without showing that every comparable vehicle had a reported sales price equal to its list price, then Plaintiffs' claims, like those of Class members, will fail on the merits. For purposes of class treatment, the question is not whether a plaintiff's theory of liability is meritorious, but whether the claims "will prevail or fail together." *Amgen*, 568 U.S. at 459-60. The *Volino* court rejected this very argument:

> The PSA purports to project the outcome of uncertain future sales using aggregate data from past sales of similar vehicles…Plaintiffs' complaint is not that the specific PSA applied to any specific comparable vehicle guessed wrong in hindsight, but that no PSA should have been applied in the first instance, because the data itself is manipulated.

2023 U.S. Dist. LEXIS 44666, at *8; *accord Drummond*, 2023 U.S. Dist. LEXIS 140205, at *32 ("The putative plaintiffs do not challenge the price for which PSAs predict each car will sell; rather, they challenge the application of PSAs altogether… The putative plaintiffs maintain they are inaccurate because they misrepresent current market behavior. It is this dispute, not the individual projected sale price of each vehicle, that is at the center of this action."). And Plaintiffs' theory is

7

supported by expert testimony on the market, appraisal standards, vast DMV market data, and J.D. Power's own data.[2]

Progressive also simply asserts that valuations are inherently individualized and that a jury might credit Plaintiffs' evidence that ACV equates to the Mitchell Report without the PSA or it might pick some other amount. Opp. at 18. True, vehicle valuations are individual occurrences; happily, however, Mitchell has already done individual valuations, and every witness—fact and expert—agrees with all aspects of the Mitchell Report except for application of the PSAs. *See, e.g.*, *Volino*, 2023 U.S. Dist. LEXIS 44666, at **8-9 (rejecting identical argument and noting that if plaintiffs prevail, "then simply recalculating the valuation using Progressive's methodology without the PSA will accurately value each class member's vehicle."); *Brown*, at 22 (same); *Slade*, 856 F.3d at 411. As such, and as Kinney acknowledged, the actual evidentiary dispute the jury will resolve is between Progressive's valuation (Mitchell with the PSA) and Plaintiff's (Mitchell without the PSA). *See Brown*, at 21 ("Plaintiffs properly note that the jury will be presented with two competing viewpoints"). Second, such argument makes no sense: That a jury might not credit Plaintiff's evidence does not mean it is not common to the Class. *Volino*, 2023 U.S. Dist. LEXIS 44666, at *9; *Brown*, at **25-26.

Fundamentally, these arguments are simply assertions Plaintiffs cannot establish based on the evidence presented that ACV equals the Mitchell Report after excising the PSA. Such arguments have *nothing* to do with class certification. If Progressive is correct, it will prevail on the merits. But the evidence will be common.

---

[2] Progressive's arguments are entirely without merit on their own terms. It cites a "study" from Dr. Walker, who used vehicles from JD Power's dataset, which *already excluded* vehicles where the S/L Ratio was 1.0 or greater. Exh. 14 (Walker Dep.) at 15:16–16:4. This "study" shows merely that a subset of the manipulated data approximates the broader manipulated data. That's…not surprising.

### 3. Progressive failed to identify counterevidence demonstrating that individual defenses would overwhelm a trial and predominate the common issues.

When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately...." *Tyson Foods*, 577 U.S. at 453-54. So, the question is not whether Progressive identified individualized defenses or issues, but whether such defenses are so significant as to predominate the litigation and cannot be "tried separately."

Progressive simply fires a scattershot of purported defenses without support. For example, Progressive argues other valuation sources, such as guidebooks like NADA, might have valued an insured's vehicle differently than Mitchell and sometimes for less. Opp. at 19. This fails for numerous reasons. First, NADA does not value vehicles *at all*, which is why Progressive's own expert disclaims them as valuations: "NADA…do[es] not fully account for current supply and demand conditions in the local area of the loss vehicle, vehicle condition[,] and certain options and features." Exh. 14 (Walker Dep.) at 37:11-22. As such, NADA is, at best, nothing more than a "starting point" and does not constitute an ACV calculation. Id. at 37:11-39:8. Merritt agrees they are, at best, a reference point, not a standalone appraisal of ACV. *See* Ex. 15 (Merritt Rebuttal Report). A J.D. Power representative explained that NADA is "not designed or intended to provide specific valuations for specific vehicles at a particular time." *Id.* at Ex. 1, p. 2. Even were NADA an appraisal of ACV, Colorado law forecloses Progressive's "we always could've paid you less" chicanery: "An insurer may not use different credible sources of valuation only to determine the lowest amount payable for the total loss of a motor vehicle"—which is precisely what Progressive is attempting to do. C.R.S. 10-4-639(4).[3]

---

[3] Notably, a review of 42,139 claim files in the class settlement in *Slade* showed NADA was higher than Mitchell 77% of the time with an average difference of $1,152.29. Ex. 16 (Special Master

9

But more fundamentally, even had Progressive identified a substitute valuation source, it still would have failed to raise predominating individual issues because:

> [T]hat would equally be true if any individual class member tried to use this or any other method of proof in an individual contract action. Progressive is free to dispute Plaintiffs' proof of [ACV] when it is asserted on behalf of tens of thousands of insureds just as when it is asserted for only one. But Progressive can hardly complain that the methodology Plaintiffs would impose on them is the one Progressive chose and developed.

*Volino*, 2023 U.S. Dist. LEXIS 44666, at *9; *see also Brown* at 25-26 (rejecting argument that plaintiffs must show Progressive's ACV calculation was less than NADA because they "submitted evidence that excising the PSA results in a value that closely aligns with the ACV" and thus "their methodology *can* be used to make a class-wide liability determination. Whether the factfinder agrees…is not relevant at the class certification stage.").

Similarly lacking in evidentiary support is Progressive speculation that perhaps the Mitchell methodology got something else wrong, and perhaps those errors redounded to the insured's benefit. Opp. at 19-20. As an initial matter, this would not raise individualized issues. In *Hicks*, the insurer argued "some insureds were not damaged because it [] overestimated ACV payments to such a degree that the deduction of labor depreciation resulted in no damages," *Hicks*, 965 F.3d at 460, just as Progressive argues here. The court rejected such argument because any overestimates may merely constitute an "error in favor of the insured," the resolution of which would be "itself a common legal question capable of classwide resolution." *Id.* at 460–61. Also, "whether State Farm made an error" on a separate element of the calculation "is a question separate from this class litigation …. [t]he only dispute is over…a discreet portion of the formula that is easily segregated and quantified." *Mitchell*, 106 F.3d at 711–712. *Volino* likewise rejected identical

---

Report). Even if Progressive had an expert to enter NADA into evidence (rather than disclaim it), this is a self-defeating road Progressive would not rationally choose to walk at trial.

10

speculation. 2023 U.S. Dist. LEXIS 44666, at *9. And *Mitchell* explained that even were overvaluations unrelated to the discrete contested element of ACV, they would pose "a question separate from this class litigation[,]" leaving it to the district court "to handle sub-issues that may or may not arise in granting relief." 954 F.3d at 712.

In any event, even the hypotheticals Progressive's counsel posed are unpersuasive. For example, Progressive's counsel speculates it is permissible to "double dip" by applying a negative adjustment for both condition *and* for title history or by applying a negative adjustment for both condition *and* for prior damage. But Mitchell's documents clearly explain why such double-dipping would be inappropriate. Composite Exh. 17.  Progressive properly does not attempt to shortchange insureds by double dipping and simultaneously applying both adjustments—yet its counsel now asks this Court to adopt a position no witness believes is permissible. And Progressive's counsel does not—because they cannot—point to a single witness to support such speculation. Rather, all its witnesses stand behind the Mitchell methodology *and* the specific application of each adjustment. Ex. 2 at 58:7–62:19, 82:15–84:7; Ex. 18 at 21:6–25:3; Ex. 13 at 74:21–75:04. Critically, courts universally agree that "arguments woven entirely out of gossamer strands of speculation and surmise" do not predominate. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000).

Finally, Progressive again throws out a litany of situations where it asserts Class members did not suffer injury even if ACV was underpaid. Opp. at 20-21. In several of the examples—where an insured negotiates an amount or goes through appraisal such that the payment was not "based on" a Mitchell Report and where the claim was denied or was covered by a third-party insurer—

11

the individual would simply not be a member of the Class.[4] In the other examples, Progressive is simply wrong. Progressive asserts that because some insureds independently contracted for third-party GAP coverage, their injuries are not redressable. Opp. at 20. Progressive cites no law supporting such proposition because there isn't any. Insureds are entitled to receive the benefits of their bargain regardless of whether they will keep the money or may have to pass it on to a third-party creditor, such as a GAP provider or any other creditor (child support, credit card company, alimony, etc.). As the Eighth Circuit explained, even if a third-party is entitled to the *entirety* of contractual benefits, the injury—failure to receive the benefit of the bargain—is redressable "by awarding the contractual benefits to which the participant is entitled." *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020). Were Progressive correct, it could refuse to pay any valid claim to an insured with third-party GAP protection.[5] Of course, that's not the law, and courts bury that argument down when insurers raise it. *Davis v. Geico Cas. Co.*, 2021 U.S. Dist. LEXIS 237288, at **6–7 (S.D. Ohio Dec. 13, 2021). What happens to the money after Progressive pays the amount it is obligated to pay is none of Progressive's concern.

Progressive also points out that some named insureds did not own their vehicles. To the extent Progressive is referencing insureds who leased their vehicles—meaning the lessor was the vehicle owner—courts have universally agreed that where an insurance company makes no distinction between leased and non-leased vehicles and promises the same coverage, it owes the

---

[4] To the extent the insured caught an error and the Mitchell Report was re-run without the error, this is not a "negotiation" and has nothing to do with whether application of the PSA constitutes a breach of contract. Correcting *other* errors does not "make up" for the PSA deduction. *See Lewis*, 2022 WL 819611, at *10.

[5] Indeed, it is almost certainly the case that every class action includes some class members where a third-party may be entitled to the money through a lien or subrogation. If this precluded certification, there could be few, if any, class actions. Progressive owes what it promised to pay its insureds, irrespective of what obligations to others those insureds may downstream.

same benefits. *See, e.g.*, *Paris v. Progressive Am. Ins. Co.*, 558 F. Supp. 3d 1245, 1255 (S.D. Fla. 2021) ("The Policy [] does not distinguish between the ACV to be paid for an owned or a leased vehicle"). Moreover, the Policy asserts Progressive will pay policy benefits to either the named insured *or* the owner—it cannot now argue that the named insured is not entitled to policy benefits unless it is the vehicle's titled owner. CITE POLICY. Regardless, per *Hicks*, *Mitchell*, and *Stuart*, even were these "defenses" legitimate, they can be addressed in the claims administration process.

### 4. The case law on which Progressive relies is inapposite.

Like *Volino*, *Brown*, *Drummond*, *Clippinger*, *Slade*, *Sampson*, *Shields*, *Lewis*, *Hicks*, *Stuart*, and *Mitchell*, Plaintiffs' claims are suitable for class treatment. Progressive devotes less than *half a page* to the three identical cases and essentially asserts nothing more than that they were wrongly decided. Instead, Progressive cites and relies on irrelevant and inapposite cases.

First, consider *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 (9th Cir. 2022), and *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*, No. C20-454 MJP, 2022 WL 1404526 (W.D. Wash. May 4, 2022), both of which concerned the same regulation and theory. In *Lara*, the plaintiffs challenged condition adjustments, which were "not itemize[ed] or explain[ed]," as required by the regulation. 25 F. 4th at 1137. Likewise, the plaintiffs in *Ngethpharat* informed the court they never "*intended* to show that they received less than the ACV." 2022 WL 1404526, at *3 (emphasis added). Because they intended to prove liability and damages *solely* through a technical violation, the plaintiffs failed to present evidence or "retain[] an expert to opine on…why backing out these [PSA] deductions from the Autosource reports arrives at a correct ACV." *Id*. Such theory is a non-starter because a regulatory violation is not *ipso facto* a breach and "even an adjustment that deviates from the regulatory process might still lead to the correct ACV." *Id*. at *3. Consider a negative condition adjustment of $1,000.00 that was accurate but not itemized. This would be a technical violation (it was not itemized) but not a breach (it was accurate). But the plaintiffs did

13

not believe anything other than a technical violation was necessary, disclaimed "they received less than the ACV" and did not present *any evidence* as to the ACV of their vehicles nor how they would do so for class members. *Id*. at *3-5. Here, Plaintiffs bring substantive claims for breach of contract supported with substantial evidence—indeed, millions of datapoints. *See Volino*. 2023 U.S. Dist. LEXIS 44666, at *8 (distinguishing these cases because the plaintiffs "offered no proof of [ACV]" and relied on "technical state insurance regulations that did not affect the valuation").

Also, *Curtis v. Progressive Northern Ins. Co.*, 2020 WL 2461482 (W.D. Ok. May 12, 2020) is irrelevant because it addressed a completely different theory with different evidence—or rather, no evidence at all—based on a different state's law. Once again, the plaintiffs' theory was based on a violation of Oklahoma statute, and, as such, they believed the entire Mitchell methodology violated a statute and had to be scrapped, meaning ACV needed to be re-calculated from scratch and replaced with NADA. *Id*. at **6-7. This failed for numerous reasons, not least of which was that (1) the relevant Oklahoma regulation neither required NADA nor foreclosed Mitchell, and (2) the plaintiff, incredibly, did not provide a single example, other than the named plaintiff's, of Mitchell being less than NADA, and (3) plaintiff put on no evidence that NADA would provide a proper appraisal of ACV. *Id*. at **7-8.  Once again, this is nothing like Plaintiffs' claim. *See Volino*, 2023 U.S. Dist. LEXIS 44666, at *8-9 (rejecting these cases because they merely "argued that Progressive's valuations were wrong because they did not match valuations from the [NADA], but did not show that NADA [] constituted [ACV]"). Rather, as in the cases cited herein, certification is appropriate because Plaintiffs have presented common *evidence* supporting their claims.

Finally, Progressive relies on *Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1102 (6th Cir. 2022), which involved a takings clause claim for homeowners whose homes were seized by a county for failure to pay taxes. The plaintiff sought the difference between the fair market

value of the house at the time of the taking and the property taxes owed. *Id.* at 1105. The plaintiff sought to use the most recent tax assessment of the homes as his evidence of fair market value. It is difficult to know how many of the dispositive differences to point out. Start with the fact that valuations for tax assessments occurred every *six years*. *Id.* at 1107. To suggest that an assessed value is evidence of fair market value three, four, five, six years later is facially absurd. Consider also that many of the homes had been abandoned after the most recent tax assessment but before the taking. *Id.* It is equally obvious that a tax assessment of a property prior to abandonment is not evidence of the fair market value after it has deteriorated through abandonment. And consider that in Ohio, "the assessed valuation of property is not evidence of value for" non-tax purposes. *Id.* at 1108 (collecting cases). Obviously, if assessed valuations are not admissible evidence at all, they cannot be common evidence. Progressive cannot colorably argue its own methodology is *not even evidence* of a vehicle valuation.

**C. Class treatment is superior to alternative forms of adjudication.**

Finally, Progressive's cursory superiority arguments should be rejected. Nothing prevents insureds from pursuing alternative dispute resolution—the Class is defined as those whose claim was settled based on a Mitchell Report.[6] *See Brown*, at 32, n.5.

Progressive suggests the Class is not ascertainable, but that requirement is met so long as the Class is defined with reference to objective criteria. *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). Moreover, ascertainability is part of the numerosity analysis, *see* Motion at 10-11, which Progressive does not challenge. Progressive does not suggest the criterion for membership is subjective, choosing instead to ask this Court to commit error by holding a necessity of file-by-file review renders a Class unascertainable. Of course, no such review is necessary—the

---

[6] Also, appraisals are rare and well-documented when they occur. Exh. 18 at 32:7-37:21.

Parties jointly agreed to a Class list in *Volino* without undergoing a file-by-file review. This is because most of the items Progressive listed—retreads of its predominance argument—have nothing to do with class membership. And the ones that do are easily resolvable: Claims settled under a report code other than a Mitchell Report is coded as such in the spreadsheet, Lacey Rep. at 10, and claims where coverage was denied is easily identified by the spreadsheet data. And to the extent individual claim file review were necessary—which it has not been in any of the three cases cited herein—"Progressive's own recordkeeping choices might increase their own burden in discovery, but that is no reason to deny class certification." *Volino*, 2023 U.S. Dist. LEXIS at 44666, n.1. Progressive has "a due process right to contest class membership," but not "to a cost-effective procedure" for doing so. *Mullins*, 795 F.3d at 669. Instead, "a defendant may need to decide how much it wants to invest" in investigating class membership. *Id.* at 670. Here, the Class is easily ascertainable and is the superior form of adjudication. *See Brown*, at 31-35.

Dated: October 6, 2023   Respectfully submitted,

SHAMIS & GENTILE, P.A.
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299


Hank Bates (admitted *pro hac vice*)
Lee Lowther (admitted *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, Arkansas 72201
Telephone: 501-312-8500

       Fax: 501-312-8505
       hbates@cbplaw.com
       llowther@cbplaw.com

       Scott Edelsberg (admitted *pro hac vice*)
       Christopher Gold (admitted *pro hac vice*)
       **EDELSBERG LAW, P.A.**
       20900 NE 30th Ave, Suite 417
       Aventura, Florida 33180
       Telephone: 305-975-3320
       chris@edelsberglaw.com

       *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2023, a true and correct copy of the foregoing was served through electronic mail on all counsel of record.

*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq