**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-00878-NYW-MEH

MICHAEL CURRAN, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,

     Defendant.

---

## ORDER ON MOTION FOR CLASS CERTIFICATION

---

     This matter comes before the Court on Plaintiff's Motion for Class Certification ("Motion for Class Certification" or "Motion"), [Doc. 58, filed May 26, 2023], filed by Plaintiff Michael Curran, individually and on behalf of all others similarly situated ("Plaintiff" or "Mr. Curran"). Defendant Progressive Direct Insurance Company ("Defendant" or "Progressive Direct") has responded in opposition, [Doc. 69], and Plaintiff has replied, [Doc. 81].[1]  The Court finds that oral argument would not materially assist in the disposition of the Motion for Class Certification.[2]  Upon review of the Parties' briefing, the

---

[1] The Parties' briefing on the Motion is restricted.  *See* [Doc. 58; Doc. 69; Doc. 81]. However, the same documents are available elsewhere on the docket with minimal redactions.  *See* [Doc. 57; Doc. 70; Doc. 80].  For ease of reference, the Court cites to the publicly accessible, redacted briefing, and to unrestricted supporting documents, whenever possible.  In doing so, the Court uses the page numbers assigned by the Case Management/Electronic Case Filing ("CM/ECF") system.  When citing to documents from another court's CM/ECF docket, this Court uses the convention "ECF No. __."

[2] Progressive Direct marks its brief "Evidentiary Hearing Requested," and, after previewing its legal concerns with class certification, states that the "Court should grant Defendant's request for an evidentiary hearing to discuss these concerns."  [Doc. 70 at 1, 5].  It is unclear to the Court whether Defendant in fact seeks an *evidentiary* hearing, however, considering the extensive evidentiary material submitted in support of the

entire docket, and the applicable case law, this Court respectfully **GRANTS** the Motion for Class Certification.

## BACKGROUND

The Court has previously discussed the factual background of this case.  *See* [Doc. 50 at 1–4].  According to the Second Amended Class Action Complaint, on August 12, 2021, Mr. Curran was involved in an automobile collision that caused physical damage to his vehicle.[3]  [Doc. 21 at ¶ 16].  At the time of the collision, Mr. Curran was insured through Progressive Direct.  [*Id.*].  Progressive Direct declared Mr. Curran's vehicle to be a total loss.  [*Id.* at ¶¶ 17–18].  Pursuant to Mr. Curran's insurance policy (the "Policy"), Progressive Direct purported to pay Mr. Curran the actual cash value ("ACV") of his total loss vehicle.  [*Id.* at ¶¶ 2, 18].

In this lawsuit, Mr. Curran challenges Progressive Direct's process by which it calculates the ACV of a total loss vehicle.  Plaintiff alleges that when Defendant calculates valuations and claim payments, it "systemically employs a routine 'total loss settlement process'" that "involves obtaining a 'Vehicle Valuation Report' from Mitchell [International, Inc. ("Mitchell")] and relying upon the valuation provided by Mitchell as the ACV amount owed under the policy."  [*Id.* at ¶¶ 1, 19].  The Mitchell Vehicle Valuation Reports purport to contain values for comparable vehicles for sale in the insured's geographic area, which are used to compute a valuation for the total loss vehicle.  [*Id.* at ¶ 20].  The Valuation

---

Parties' briefing and the fact that Defendant's general request for a hearing is made in connection with its legal arguments.  The Court finds neither an evidentiary hearing nor oral argument necessary at this stage.

[3] This action was originally filed by Plaintiff Hersey Banks ("Plaintiff Banks") based on an automobile collision on or about October 1, 2018.  [Doc. 1 at ¶ 11].  Mr. Curran was substituted for Plaintiff Banks as the named plaintiff in the First Amended Class Action Complaint filed on May 2, 2022.  [Doc. 9].

Reports then adjust the advertised sale prices of the comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. [*Id.*].[4] The Valuation Reports also apply "Projected Sold Adjustments" ("PSAs"), which are "adjustment[s] to reflect consumer purchasing behavior (negotiating a different price than the listed price)," to the comparable vehicles. [*Id.* at ¶¶ 21–22].

Mr. Curran alleges that the Projected Sold Adjustments do not reflect market realities and instead are contrary to customary automobile dealer practices and inventory management. [*Id.* at ¶ 23]. Specifically, Plaintiff alleges that previously, dealerships would price vehicles above market value to allow for negotiation, in the hopes of securing higher profits from buyers who were poor negotiators. [*Id.* at ¶ 24]. But now, Plaintiff alleges, the "intense competition" in the age of "Internet pricing and comparison shopping" causes dealerships to no longer employ this practice; instead, dealers now "use sophisticated pricing software . . . and now appraise vehicles before acquiring them to price them to market and do not negotiate from that price." [*Id.* at ¶¶ 23, 25]. For this reason, Mr. Curran asserts that "a negotiated discount off the cash price is highly atypical and is not proper to include in determining [the] ACV" of a total loss vehicle. [*Id.* at ¶ 27]. Mr. Curran alleges that the Projected Sold Adjustments are "contrary to proper appraisal methodologies for determining ACV" because they "permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections." [*Id.* at ¶ 28]. Furthermore, he asserts that Progressive Direct

> thumbs the scale [against insureds] by discarding vast amounts of relevant data that contradict any application of a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as

---

[4] Mr. Curran does not challenge these types of adjustments. *See* [Doc. 21 at ¶ 28].

the "sales price" but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

[*Id.* at ¶ 29].  Mr. Curran also alleges that Progressive Direct excludes certain transactions from the calculation of Projected Sold Adjustments—such as transactions in which the sold price was greater than the list price—and that it has done so "[w]ithout having performed any investigation or study" into market realities.  [*Id.* at ¶¶ 30–34].  And finally, Plaintiff alleges that Defendant's use of Projected Sold Adjustments is arbitrary because Defendant does not apply these adjustments in the states of California or Washington. [*Id.* at ¶ 47].

Defendant applied Projected Sold Adjustments to Plaintiff's Valuation Report.  [*Id.* at ¶ 19].  For Mr. Curran specifically, PSAs "in the amounts of -$1,302.00, -$1,294.00, and -$1,485.00 . . . were applied to each of the three comparable vehicles" in his Valuation Report.  [*Id.* at ¶ 21].  Mr. Curran alleges that "were it not for this deceptive and improper adjustment, the payment of ACV by Defendant would have been $1,360.33 higher, before adding the related increase in payments for applicable sales taxes."  [*Id.* at ¶ 49].

Plaintiff asserts the following claims:  (1) breach of contract; and (2) bad faith breach of an insurance contract.  [*Id.* at 14–16]; *see also* [Doc. 50 at 9 (construing claim for breach of covenant of good faith and fair dealing as claim for bad faith breach of insurance contract)].[5]  The Court has denied Progressive Direct's motion to dismiss these

---

[5] The Second Amended Class Action Complaint also contains a declaratory judgment claim, [*id.* at 16–17], which the Court has dismissed for lack of jurisdiction, [Doc. 50 at 16–19].

causes of action.   *See* [Doc. 50 at 6–16].   Now, Plaintiff moves to certify the following

class of individuals:

> All persons who made a first-party claim on a policy of insurance issued by
> Progressive Direct Insurance Company to a Colorado resident where the
> claim was submitted from April 12, 2019, through the date an order granting
> class certification is entered, and Progressive determined that the vehicle
> was a total loss and based its claim payment on an Instant Report from
> Mitchell where a Projected Sold Adjustment was applied to at least one
> comparable vehicle.[6]

[Doc. 58-5 at 32].   The Motion for Class Certification is ripe for decision.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 permits district courts to certify a class action

"if the proposed class satisfies the requirements of Rule 23(a) and the requirements of

one of the types of classes in Rule 23(b)."   *DG ex rel. Stricklin v. Devaughn*, 594 F.3d

1188, 1194 (10th Cir. 2010).   "Rule 23(a) requires numerosity of class members,

commonality of at least one question of fact or law among the class, typicality of named

plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the

named plaintiffs and their attorneys as class representatives."   *Id.*   A party seeking class

certification must establish that all four prerequisites of Rule 23(a) are satisfied.   *See City

P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 578 (D. Colo. 2002).

In addition to the class action prerequisites in Rule 23(a), Plaintiff must establish

one of the three requirements in Rule 23(b).   Fed. R. Civ. P. 23(b); *CGC Holding Co.,*

---

[6] This class definition does not appear in the Motion for Class Certification.  *See generally* [Doc. 57].  Instead, the Motion requests "certification of the [c]lass proposed in Exhibit 7 and Exhibit 4 thereto."  [*Id.* at 5].  Having reviewed the sub-exhibits to Exhibit 7 to the Motion, the Court assumes that Plaintiff means to refer the Court to *Exhibit 2* to Exhibit 7, which is the class definition, and not Exhibit 4 to Exhibit 7, which is not.  *See* [Doc. 58-5 at 32, 37–42].

*LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) ("If the class meets the four criteria under Rule 23(a), then the court must consider whether the class satisfies at least one of the three alternative class-types under Rule 23(b)."). Here, Mr. Curran seeks to proceed under Rule 23(b)(3), which permits a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The proponent of certification bears the burden of proving Rule 23's requirements are met. *See DG*, 594 F.3d at 1194. In determining whether a party carries this burden, courts "must accept the substantive allegations of the complaint as true." *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004). The analysis should be "rigorous," *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 913 (10th Cir. 2018) (quotation omitted), and should focus on the claims at issue, *see Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 841 (10th Cir. 2023) (finding that district court abused discretion by "failing to perform claim-specific analysis"). Ultimately, class certification is "committed to the discretion of the trial court." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982). Courts must be mindful that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)); *see also Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 619 n.2 (D.N.M. 2007) ("[T]he overwhelming majority of other circuits and the Supreme Court . . . have held that a district court is not limited to the allegations raised in the complaint, and should

instead make whatever legal and factual inquiries are necessary to make an informed determination of the certification issues." (collecting cases)).

**ANALYSIS**

The Court notes that several parallel class actions arising out of insurance companies' reliance on Mitchell's use of PSAs to value total loss vehicles have been preliminarily certified in other jurisdictions.  *See Volino v. Progressive Cas. Ins. Co.*, No. 21-cv-06243-LGS, 2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023); *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-cv-00175-TCB, 2023 WL 7219499 (N.D. Ga. Aug. 3, 2023); *Drummond v. Progressive Specialty Ins. Co.*, No. 5:21-cv-04479-EGS, 2023 WL 5181596 (E.D. Pa. Aug. 11, 2023).  As explained below, this Court agrees with much of these courts' analysis and will grant certification of Mr. Curran's proposed class because he has met his burden under Rule 23 and, as relevant to the disputed issues on the Motion for Class Certification, Progressive Direct fails to show that common issues do not predominate over individual ones.

**I.      23(a) Requirements**

On Rule 23(a), Defendant's arguments focus on the commonality requirement, although Plaintiff's burden extends to the other requirements—numerosity, typicality, and adequacy of representation—as well.  *See Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023).  The Court considers each in turn.

**A.      Numerosity**

Rule 23(a)'s first requirement is that a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In the Tenth Circuit, a district court has "wide latitude" to assess the practicability of joinder, which is "a fact-specific inquiry" as to which "there is no set formula" or magic number.  *Trevizo v. Adams*, 455

F.3d 1155, 1162 (10th Cir. 2006) (quotation omitted).  Plaintiff suggests that joinder would be impracticable here because, according to an expert report submitted in connection with the Motion, the proposed class would consist of approximately 15,000 members. *See* [Doc. 57 at 13]; *see also* [Doc. 58-5 at 13].  Defendant does not contest Plaintiff's ability to meet the numerosity requirement, *see generally* [Doc. 70], and the Court finds that the contemplated class size indeed renders joinder impracticable in this litigation. *See, e.g.*, *Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 358 (D. Colo. 1999) (finding numerosity requirement satisfied where proposed class consisted of several thousand Colorado residents).[7]

## B.   Commonality

The second requirement in Rule 23(a) is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  On this matter, the Tenth Circuit instructs

---

[7] In its briefing on the Rule 23(b)(3) superiority requirement, Defendant contends that "a class action would be unmanageable because the class is not ascertainable."  [Doc. 70 at 26].  According to Defendant, "Plaintiff proposes no method for identifying which insureds are excluded from the class or lack standing due to" various factors discussed with respect to predominance, and any individual review would be highly time-consuming. [*Id.* at 27].  Plaintiff (correctly) replies that, as a matter of form, ascertainability is part of the numerosity inquiry under Rule 23(a).  *See* [Doc. 80 at 15]; *see also Evans v. Brigham Young Univ.*, No. 22-4050, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023) ("In [the Tenth Circuit], we treat ascertainability as a sub-requirement of numerosity.").  Substantively, Plaintiff adds that "Progressive has a due process right to contest class membership, but not to a cost-effective procedure for doing so."  [Doc. 80 at 16 (quotation omitted)].  While the Tenth Circuit has not explicitly adopted the Seventh Circuit's ascertainability standard, which focuses on defining classes by reference to objective criteria, district courts may "consider these tests as part of their discretion to grant or deny class certification."  *Evans*, 2023 WL 3262012, at *8 (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015), and *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999)).  In light of that authority, and the Parties' arguments, it is evident to the Court that all members of the proposed class are ascertainable by reference to objective criteria, as all class members made ACV claims for total loss vehicles with Progressive Direct and had their payouts valued by Mitchell and reduced with PSAs.

that "[t]he district court should carefully examine what facts are required to prove" the claims at issue and assess whether putative plaintiffs "have shown that they could establish those facts through common evidence."  *Brayman*, 83 F.4th at 839.

Although some of Progressive Direct's brief appears to dispute commonality, *see* [Doc. 70 at 14–18 (arguing that Plaintiff has not shown any common question amenable to collective resolution)], the Court finds that such arguments are better addressed with respect to predominance.  After all, commonality under Rule 23(a)(2) requires only a single common question.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 359; *see also Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023) (reversing decertification order where district court "scrutiniz[ed] the proposed class for noncommon issues, rather than common ones").

It cannot be disputed that at least some common questions exist where both of Plaintiff's claims turn on the legitimacy of a value estimation mechanism that has been allegedly applied to exact the same underpayment injury on all proposed class members. *Cf.* [Doc. 57 at 15 (arguing that "[c]ommonality is satisfied because whether Progressive's application of the PSA to comparable vehicles' listed prices constitutes a breach of the form Policy is subject to common evidence and, thus, its answer will apply equally")].  As explained in more detail in the context of the predominance analysis, the ability of the PSA deduction to capture ACV "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  Proposed class members could use the same evidence submitted in connection with the Motion in their own individual actions to refute the accuracy of the PSA deduction.  *See Brown*, 2023 WL

7219499, at *7 ("The factfinder is capable of making a class-wide determination of whether application of the PSA constituted a de facto violation of the policy.  If it answers in the affirmative, it will do so for the entire class.").  Indeed, some of Plaintiff's evidence is being *reused* by stipulation from other actions in other jurisdictions in which class certification has been granted.   *See* [Doc. 57 at 5 nn.1–2].   To the extent individual questions may be implicated by other aspects of this litigation, the Court will consider Defendant's arguments in the context of the "more demanding" predominance inquiry.  *Wal-Mart Stores, Inc.*, 564 U.S. at 375 (Ginsburg, J., concurring in part and dissenting in part); *see also Volino*, 2023 WL 2532836, at *6 ("To the extent Progressive's arguments sound in commonality, they are subsumed under, or superseded by, the more demanding predominance requirement of Rule 23(b)(3)." (quotation omitted)).

### C.    Typicality

Next, Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  That means Mr. Curran's claims must "be typical of the claims of the class [he] seek[s] to represent," although they "need not be identical."   *DG*, 594 F.3d at 1198; *see also id.* at 1198–99 ("Provided the claims of [n]amed [p]laintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.").  Together, commonality and typicality "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiff argues that the proposed class meets the typicality requirement because all "claims arise from the same challenged conduct and share the same essential characteristic." [Doc. 57 at 24]. He contends that all proposed class members' causes of action are based on whether applying PSAs to value their total loss vehicles "is authorized by the plain language of the Policy" they share, which entitles them to ACV. [*Id.*]. Defendant does not appear to contest typicality. *See generally* [Doc. 70]. The Court agrees with Plaintiff that the proposed class members' claims are plainly typical: they all involve the same theory of legal harm under materially identical factual circumstances. *See DG*, 594 F.3d at 1199 ("[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."); *see also Brown*, 2023 WL 7219499, at *5 (finding typicality requirement satisfied in similar class action because "the putative class's claims all arise from the same 'course of conduct'—that is, Progressive allegedly undervaluing total-loss claims by applying a PSA").

### D.    Adequacy of Representation

The last threshold requirement in Rule 23(a) is that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation will be found where the named plaintiffs have no antagonistic or conflicting interests with those of the class and where class counsel is qualified, experienced and able to conduct the proposed litigation." *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 694 (D. Colo. 1998). Moreover, this requirement "is unique in that it has a 'constitutional dimension, since it would violate due process to bind a class member to a ruling against inadequate class representatives.'" *Id.* (quoting

*In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. 113, 117 (D. Colo. 1986)); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997).

In the Motion, Plaintiff contends that he "has a personal interest in the outcome of this case, has presented no claims that would be detrimental to the [c]lass interests, and all [c]lass members would benefit from a finding that the PSA is improper and constitutes a breach." [Doc. 57 at 25]. Plaintiff adds that he has "retained qualified counsel who have experience litigating class action cases and are committed to expending the resources necessary to prosecute this claim." [*Id.*]. Defendant does not appear to contest this prong. *See generally* [Doc. 70]. Considering the material submitted in connection with the Motion, [Doc. 57-12], and Plaintiff's litigation conduct, this Court finds that Mr. Curran and his counsel will ably and adequately represent the proposed class members and their interests. The Court also finds that Mr. Curran is "knowledgeable as to the status and underlying legal basis of the action, that [he is] willing and able to pay notification and other costs, that [he] will diligently pursue [his] claims, . . . that [his] interests are not antagonistic to the interests of the class," and that his counsel is both "competent and experienced in the particular substantive area involved." *See In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. at 117. As discussed in the Declaration of Hank Bates, Plaintiff's counsel is experienced in litigating comparable class actions in state and federal court. *See, e.g.*, [Doc. 57-12 at ¶¶ 2–3]. The Court thus finds that Plaintiff has satisfied Rule 23(a).

## II.     23(b)(3) Requirements

On Rule 23(b)(3), Defendant argues that Plaintiff fails to show both predominance and superiority, such that class certification is improper.  The Court respectfully disagrees.

### A.     Predominance

To certify a damages class action under Rule 23(b)(3), the Court must first "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3).   "While [the commonality requirement in] Rule 23(a)(2) requires only that the class share at least one common question of law or fact, Rule 23(b)(3) 'calls upon courts to give careful scrutiny to the relation between common and individual questions in a case.'"   *Sherman*, 84 F.4th at 1194 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  However, a finding "that determining damages would necessitate individualized inquiries . . . cannot alone sustain the . . . conclusion that [a] proposed class fails Rule 23(b)(3)'s predominance requirement."  *Id.* at 1195.

In this case, the heart of Defendant's opposition to class certification is its predominance argument.  Defendant makes four related points in connection with that argument:   (1) that whether the PSA is "contrary to industry practices and consumer experiences" is not a common question; (2) that whether Plaintiff has provided a "common methodology" for calculating ACV is not a common question; (3) that whether Progressive Direct actually paid each prospective class member ACV is an individualized issue; and (4) that determining damages is an individualized issue.   *See* [Doc. 70 at 14–26]. Defendant's primary contention is that "this type of case is inapt for class resolution" because "[a]ssessing the value of a used car is an inherently individualized inquiry, and

there is no way to adjudicate Plaintiff's claims on behalf of a state-wide class without determining the value of each class member['s] unique vehicle." [*Id.* at 3]. Defendant is correct to focus on whether each putative class member received ACV, as opposed to the PSA's "methodological[] sound[ness]" in isolation. [*Id.*]. However, considering the relationship between those matters posited by Plaintiff's allegations and supported by common evidence submitted with the Motion, the Court is respectfully unconvinced at this stage that individual issues predominate.

Defendant contends "that whether a PSA may have been proper depends on the particular transaction" involved, as vehicle sales involve all sorts of variables, which undermines Plaintiff's assertion that common issues predominate. *See* [*id.* at 14–18]. Relatedly, Defendant disputes Plaintiff's characterization of the PSA's accuracy, grounding some of its arguments in the variety of market conditions that can affect the difference between a used vehicle's list price and sale price. *See, e.g.*, [*id.* at 20]. However, Plaintiff persuasively responds that, to the extent the claims at issue are based on Progressive Direct's knowing failure to provide ACV, and assuming that a factfinder agrees that applying PSAs improperly reduce otherwise legitimate loss valuations, the same error would infect every payout premised on PSAs. *See* [Doc. 80 at 4–5]. In other words, "[t]he injury is the devaluation [of ACV] resulting from the application of PSAs, which allegedly breaches the contract between Progressive and its insureds." *Drummond*, 2023 WL 5181596, at *11; *see also Brown*, 2023 WL 7219499, at *4 ("[I]f the application of the PSA is found to be generally violative of Progressive's form policy, it would necessarily be based on a finding that application of the PSA results in a payment different from the actual cash value of the totaled vehicle."). And, with respect to

arguments about the accuracy of PSAs, the Court finds that, at best, such arguments get at whether PSAs do or do not result in ACV, not whether this issue is susceptible to individual or common proof.  *See Volino*, 2023 WL 2532836, at *9 ("The fact that the jury might not be persuaded by Plaintiffs' common proof does not mean Plaintiffs lack common proof.").   Indeed, what matters here is that "[t]he putative plaintiffs do not challenge the price for which PSAs predict each car will sell; rather, they challenge the application of PSAs altogether."   *Drummond*, 2023 WL 5181596, at *10.   For these reasons, the scale of the dispute which Plaintiff has framed for the factfinder is predominantly collective.

This reasoning also disposes of Defendant's suggestion that class members' damages do not present a common question because "subtracting the PSAs from every class member's [Mitchell-determined ACV offer] would result in overvaluations of many class members' vehicles." [Doc. 70 at 17].  In taking this position, Defendant ignores what Plaintiff is asking the jury to find.  Plaintiff's view is that, "[i]f the factfinder accepts Plaintiffs' evidence on the state of the market, then simply recalculating the valuation using Progressive's methodology without the PSA will accurately value each class member's vehicle."  *Volino*, 2023 WL 2532836, at *8; *see also* [Doc. 80 at 5].  In other words, the valuation of damages presents a common question not simply because Plaintiff wants a jury to conclude that the PSA does not represent ACV, but because Plaintiff wants a jury to conclude that omitting the PSA from each valuation produced by Mitchell *would* represent ACV.  *See* [Doc. 80 at 2 ("Common proof will show Progressive thumbed the scale against its insureds by applying PSA deductions, and the remedy is to take the thumb off the scale and remove that lone line-item deduction.")].  Defendant's argument

that "a jury would not be constrained to accept Plaintiff's artificial construct that a loss vehicle's ACV is either the ACV determined by Progressive, or the ACV determined by Progressive minus the PSAs," [Doc. 70 at 4], thus misses the point for purposes of class certification.  What matters at this stage is that a jury finding in Plaintiff's favor would do so based on common issues about the PSA's accuracy with respect to assessing ACV.  *Cf. Volino*, 2023 WL 2532836, at *8 ("Whether applying the PSA was a legitimate methodology, and whether Progressive misled insureds about it, does not depend on whether the PSA's predictions occasionally came true.").  And, in any case, "Progressive can hardly complain that the methodology Plaintiff[] would impose on them is the one Progressive chose and developed."  *Id.* at *9.

As indicated above, Plaintiff cites several cases in which courts have certified classes bringing essentially identical claims with similar, if not identical, factual records.  *See* [Doc. 80 at 3 (citing *Volino*, *Brown*, and *Drummond*)].  The Court finds these cases persuasive.  Defendant limits its response to these cases to stating that they are "wrongly decided" because they "ignored the fundamental requirement that each putative class member be able to show that they received less than ACV using common evidence."  [Doc. 70 at 25].  But, as the Court has discussed, Plaintiff is trying to do exactly that—use common evidence concerning valuation methods to persuade the factfinder that ACV is generally equal to the Mitchell evaluation less any PSA deduction.  For example, Plaintiff's evidence that the PSA does not accurately reflect the difference between list and sale price in the used car market is aggregate evidence that could be deployed by each class member in an individual action.  *See, e.g.*, [Doc. 58-1 at 2–4].  The same is true of expert

opinions obtained by Plaintiff that attest to the accuracy of Mitchell's evaluation method *absent* the PSA deduction.  *See, e.g.*, [Doc. 57-8 at 7].

The cases cited by Progressive Direct, which present class-certification issues in related valuation contexts, are nonbinding and distinguishable.  For example, in *Lara v. First National Insurance Co. of America*, the Ninth Circuit affirmed the denial of class certification where the plaintiffs challenged an unverifiable and unitemized vehicle condition adjustment that could affect a valuation in either direction, that did not necessarily influence the insurer's payout, and that could ultimately lead to a separate appraisal process.  *See Lara*, 25 F.4th 1134, 1137 (9th Cir. 2022).  On those facts, the court reasoned that "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person" and would entail "looking into the actual pre-accident value of the car and then comparing that with what each person was offered, to see if the offer was less than the actual value."  *Id.* at 1139.  Here, in contrast, Plaintiff's theory is susceptible to common proof because (1) the PSA can only bring a valuation downward and (2) Plaintiff's theory is that every policyholder whose valuation was impacted by a PSA was necessarily deprived of an otherwise accurate ACV.  The former point—isolating an allegedly flawed, value-diminishing facet of a valuation all class members received—distinguishes these claims from another case Defendant cites in which the plaintiff's theory pitted different valuation methods against one another, and the class representative's desired method could actually lower certain other class members' valuations.[8]  *See Curtis v. Progressive N. Ins. Co.*, No. 5:17-cv-01076-PRW, 2020 WL

---

[8] This point likewise distinguishes this case from *Sampson v. United Services Automobile Association*, 83 F.4th 414 (5th Cir. 2023), a decision cited in Defendant's Notice of Supplemental Authority.  *See* [Doc. 82].  In *Sampson*, the Fifth Circuit reversed a grant of class certification where the prospective class "ha[d] not demonstrated that [its estimate

2461482, at *2 (W.D. Okla. May 12, 2020). And the latter point—that, in Plaintiff's view, a valuation with a PSA deduction can never result in ACV—distinguishes these claims from another case Defendant relies on, in which the Eighth Circuit suggested that a challenged property valuation tool would only result in errant valuations "some" of the time. *See In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 577 (8th Cir. 2017).

Here, the Court respectfully concludes that the predominating inquiry in this litigation is a common one: specifically, whether the factfinder will agree with Plaintiff that Mitchell's evaluation, less the PSA, accurately captures a total loss vehicle's ACV under the form policy language such that all class members whose payouts were correspondingly reduced were injured under Colorado law by being deprived of ACV in the amount of the PSA deduction in comparable vehicle value. Taking this view, it becomes evident that "Progressive's own valuation data, with and without the PSA, constitutes class-wide proof of actual cash value, which can be compared with the amount Plaintiffs were paid to determine liability and damages." *Volino*, 2023 WL 2532836, at *8. Of course, Defendant may attempt to convince the jury to the contrary by calling into question the ability of the Mitchell evaluation to deliver ACV, or by contending that the PSA is accurate for some or all insurance claimants. But, even if Defendant employs individual evidence in either respect, it will do so in the shadow of Mitchell valuations that every class member received, and that were subject to adjustments allegedly grounded

---

source, the National Automobile Dealers Association guidebook ("NADA")] equates to ACV in fact, nor put forward a coherent theory on which NADA, but not [alternative valuation sources] KBB or Edmunds, etc., can serve as a determinant of injury and liability as a matter of law." *Sampson*, 83 F.4th at 423 (citation and emphasis omitted). Here, in contrast, the Court finds that common issues predominate precisely because of the "coherent theory" Plaintiff sets out—that Mitchell, but for the PSA deduction, results in ACV, so any estimate with the PSA deduction falls short in that amount.

in ratios which, according to Plaintiff, do not reflect reality.  *Cf. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").  The Court accordingly concludes, joining several other district courts, that Plaintiff has framed this case such that the common questions predominate.  *See, e.g.*, *Volino*, 2023 WL 2532836, at *8 ("To the extent Progressive has identified individual issues that may need to be worked out at the margins, the critical common questions identified by Plaintiffs predominate over those individual inquiries."); *Brown*, 2023 WL 7219499, at *10 ("[C]ommon questions of law and fact—specifically whether a breach occurred, whether the ACV was paid, and the calculation of potential damages—predominate over any individualized question.").  And even if certain matters related to damages may require individual determinations, a finding "that determining damages would necessitate individualized inquiries . . . cannot alone sustain the . . . conclusion that [a] proposed class fails Rule 23(b)(3)'s predominance requirement." *Sherman*, 84 F.4th at 1195.[9]

---

[9] According to Defendant's November 21, 2023, Notice of Supplemental Authority, another district court has recently denied class certification in a parallel class action.  *See* [Doc. 87]; *see also Kroeger v. Progressive Univ. Ins. Co.*, No. 4:22-cv-00104-SHL-HCA, ECF No. 76 (S.D. Iowa Nov. 20, 2023).  At the outset, this Court notes that *Kroeger* is nonbinding and self-distinguishing, as it differentiates itself from cases like *Volino* on the basis of Eighth Circuit authority.  *See Kroeger*, No. 4:22-cv-00104-SHL-HCA, ECF No. 76 at 14–15.  On a more substantive level, the Court recognizes the *Kroeger* court's concern that ACV is theoretically capable of multiple means of calculation, so "even if the [c]ourt used special interrogatories to try to isolate the impact of the Projected Sold Adjustment on whether Progressive breached the contract, the jury's answer could not be translated in a meaningful way to the remainder of the class."  *See id.* at 13.  However, the Court respectfully parts ways with *Kroeger* because, as discussed above, Mr. Curran has presented a collective model of liability which will succeed or fail on an aggregate basis.  If a jury is convinced that Progressive's methodology is accurate as to ACV— except for the PSAs—the difference in valuation could be carried over to all class

### B.     Superiority

Finally, Rule 23(b)(3) advises the Court to assess whether a class action is the superior form of adjudication by considering (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).   "[C]lass status is appropriate as long as plaintiffs can establish an aggregation of legal and factual issues, the uniform treatment of which is superior to ordinary one-on-one litigation."  *CGC Holding Co., LLC*, 773 F.3d at 1086.

Plaintiff argues that class treatment is superior in light of the minimal damages this kind of litigation could recover on an individual basis.  [Doc. 57 at 25].  He adds that he is unaware of another action in this forum raising these claims, and suggests that "class treatment is manageable," in that "[l]iability will be established through common evidence of Progressive's uniform Policy provisions and method for valuing total loss claims."  [*Id.* at 26].  Defendant's response largely focuses on ascertainability concerns, [Doc. 70 at 26–27], which are subsumed within the numerosity analysis discussed above, *see supra* n.7.  To the extent Defendant's arguments apply to the superiority analysis by implicating the manageability factor, the Court agrees with the *Volino* court that "Progressive's own recordkeeping choices might increase [its] own burden in discovery, but that is no reason to deny class certification."  *Volino*, 2023 WL 2532836, at *10 n.1.

---

members to assess damages.  Of course, it remains Plaintiff's burden to convince a jury that the Mitchell methodology with PSAs removed in fact produces ACV.

Plaintiff is correct that, in this case, class treatment is superior to individual actions because separate lawsuits would likely not be feasible absent their aggregation due to the sums involved.  *Cf. Amchem Prods., Inc.*, 521 U.S. at 617 (referencing the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" (quotation omitted)).  Additionally, Defendant does not identify ongoing litigation by any proposed class members.  Nor is there reason to find the concentration of these claims in this forum to be undesirable.  Finally, the Court concludes that the legal theories of liability and damages set out by Plaintiffs in briefing the Motion can be manageably litigated in the aggregate.  *See Brown*, 2023 WL 7219499, at *11.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)  Plaintiff's Motion for Class Certification [Doc. 58] is **GRANTED**;

(2)  Plaintiff is appointed class representative, and Plaintiff's counsel is appointed class counsel under Rule 23(g), for the following class:

> All persons who made a first-party claim on a policy of insurance issued by Progressive Direct Insurance Company to a Colorado resident where the claim was submitted from **April 12, 2019, through December 18, 2023**, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle;

(3)  The Parties shall meet and confer as to the form and manner of notice under Rule 23(c)(2)(B), and the Parties shall file a proposed form of class notification for review and approval on or before **January 8, 2024**.  In the event the Parties cannot agree to the form and content of the notice, each Party may submit its own proposed notice;

(4)   Consistent with the Honorable Michael E. Hegarty's Order Granting the Parties' Joint Stipulated Motion to Amend the Scheduling Order [Doc. 64], the dispositive motions deadline is **January 17, 2024**; and

(5)   The Final Pretrial Conference set for February 20, 2024, is **VACATED**, and the Court will set a combined Final Pretrial/Trial Preparation Conference after the resolution of dispositive motions, should any be filed.

DATED: December 18, 2023                    BY THE COURT:

Nina Y. Wang
United States District Judge