IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-00878-SKC-TPO

MICHAEL CURRAN,
*individually and on behalf of all others similarly situated*,

        Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,
*an Ohio Corporation*,

        Defendant.

---

ORDER RE: DEFENDANT'S
REVISED MOTION FOR SUMMARY JUDGMENT (DKT. 142)

---

When Defendant Progressive Direct Insurance Company (Progressive) deems a vehicle it insures to be a total loss, its Auto Policy (Policy) warrants it will pay the lesser of:

    a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
    b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
    c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
    d. the Stated Amount shown on the **declarations page** for that **covered auto**.

Dkt. 21-1, p.25. The Policy states "actual cash value" (ACV) is determined by "the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* at p.26.

1

And Progressive may "use estimating, appraisal, or injury evaluation systems to assist [it] in adjusting claims under this policy and to assist [it] in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by [Progressive] or a third party and may include computer software, databases, and specialized technology." *Id*. at p.31.

Plaintiff Michael Curran and the class members each had vehicles determined to be a total loss by Progressive.[1] Although the Policy does not prescribe a particular methodology for determining ACV or market value, it is undisputed that Progressive relied on a Vehicle Valuation Report prepared by Mitchell International, Inc.'s WorkCenter Total Loss software (Mitchell Report or Report). Dkt. 138, DSUMF ¶7.[2] The Mitchell Report calculates ACV by first finding the dealer-advertised prices for comparable vehicles in the local market area. *Id*. at ¶¶9-10. It then adjusts the advertised prices to account for equipment, mileage, and vehicle configuration. *See* Dkt. 90, p.3. The Report also applies a "Projected Sold Adjustment" (PSA) to the

---

[1] It is not entirely clear why Plaintiff's truck was declared a total loss. The pleadings and previous Orders suggest it was due to an accident resulting in damages to the vehicle, whereas the Motion for Summary Judgment and Statement of Undisputed Material Facts state it was because the truck was stolen from a repair shop. Although this detail should be clarified at trial, it is of little import now because the question here is how to value the vehicle—no matter the reason it was a total loss.

[2] Both parties present a list of purported undisputed facts. Dkts. 138 (Public), 139 (Restricted). The Court refers to Progressive's facts as DSUMF and Plaintiff's as PSUMF.

2

comparable vehicles. The PSA is an adjustment "to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Dkt. 138, DSUMF ¶11.

Plaintiff contends the PSA does not reflect market realities and is contrary to customary automobile dealership practices. Dkt. 21, ¶23. This is because, as Plaintiff contends, the data used to calculate the PSA is purposefully skewed to ensure it always results in a downward adjustment to the comparable vehicles value resulting in a value below the ACV. *Id*. at ¶¶29-34. According to Plaintiff, in utilizing the PSA, Progressive breached its contractual obligation to pay him and the class members the actual cash values of their vehicles. *Id*. at pp.14-16.

Plaintiff, on behalf of himself and the Class, asserts a claim for breach of contract and bad faith breach of an insurance contract.[3] *Id*. Following certification of the class and a period of discovery, Defendant filed the present Motion for Summary Judgment. Dkts. 142, 143.[4] The Court has carefully reviewed the Motion and related

---

[3] District Judge Nina Y. Wang was the original presiding judge in this matter. Prior to the case's transfer to the undersigned (Dkt. 103), Judge Wang dismissed Plaintiff's third claim for declaratory judgment for lack of jurisdiction. Dkt. 50.

[4] The publicly available version of the Motion contains several court-approved redactions. Dkt. 142. Those redactions contain propriety information and confidential business processes, which the Court concluded warranted restriction. Although the Court used the unredacted version (Dkt. 143) in reaching its conclusions, it cites to the publicly available version because the specifics of the redacted information are not necessary to understanding the Court's conclusions. The same is true of citations to Plaintiff's Response (Dkts. 148 (Public), 149 (Restricted) and Progressive's Reply (Dkts. 155 (Restricted), 156 (Public)).

briefing, the evidence, the relevant law, and the entire case file. A hearing is unnecessary. For the following reasons, the Motion is DENIED.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury, or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

### A. Breach of Contract

In seeking summary judgment on Plaintiff's breach of contract claim, Progressive makes a variety of arguments, including that Plaintiff has failed to produce any individualized evidence regarding the value of his own car. Dkt. 142, p.10. It also contends Plaintiff has not created a disputed issue of material fact as to whether using the PSA undervalued his truck, and further that Progressive was not beholden to any specific valuation method. *Id.* at 16-21. And Progressive challenges the sufficiency of Plaintiff's proffered expert testimony to support his claims. *See generally* Dkt. 142. Respectfully, the Court is not persuaded.

The Court turns first to Progressive's arguments regarding Plaintiff's inability to present individualized evidence regarding the value of his truck or individualized evidence that using the PSA undervalued the truck's ACV. Having spent considerable time reviewing the record and various filings in this case, including Judge Wang's thorough and thoughtful Orders regarding dismissal and class certification (Dkts. 50, 90), the Court is convinced that the "heart of all the arguments stem from the fundamentally different ways that [Plaintiff] and Progressive view this case." *Brown v. Progressive Mountain Ins. Co.*, 716 F. Supp. 3d 1349, 1352–53 (N.D. Ga. 2024). To be sure, as Judge Wang pointed out multiple times in her Order regarding

5

certification, Progressive's arguments hinge on reframing Plaintiff's theory of the case. *See* Dkt. 90, pp.17-18.

According to Plaintiff and his theory of liability, the Mitchell Report without the PSA *is* the actual cash value of the total loss suffered by him and members of the class. Plaintiff also theorizes that the PSA calculation is based on unreliable and skewed data designed to result in a downward adjustment of the ACV. And Plaintiff has expert testimony to support this position. *See e.g.*, Dkt. 57-9. Thus, Progressive's argument regarding the lack of individualized evidence—from experts or otherwise—is not persuasive. *See Brown*, 716 F. Supp. 3d at 1354 ("[I]t does not matter that none of Plaintiffs' experts have an opinion on the individual ACV of any of Plaintiffs' vehicles. That is not what the experts are there to do. Rather, Plaintiffs are relying on their experts to prove broader points about the realities of the used car market and the validity of a PSA deduction."). As Judge Wang noted: "Mr. Curran has presented a collective model of liability which will succeed or fail on an aggregate basis." Dkt. 90, p.19 n.9.

The Court reaches a similar conclusion with respect to Progressive's contention that the Mitchell Report is not the sole way to determine ACV, and therefore, the Mitchell Report with the PSA does not necessarily result in payments below the ACV. This may very well be true, and certainly Progressive has evidence to support its position. But that is not Plaintiff's theory of the case, and he too has evidence of the

6

opposite. As concerns *this* Plaintiff and *this* class, the theory of the case is that the Mitchell Report, minus the PSA, is the ACV of the vehicles.

Progressive's arguments to the contrary are fundamentally the same as its earlier arguments when opposing class certification. To be sure, the case Progressive urges this Court to follow on summary judgment, *Ambrosio v. Progressive Preferred Ins. Co.*, No. CV-22-00342-PHX-SMB, 2024 WL 915184, at *1 (D. Ariz. Mar. 4, 2024), involved the court's denial of a motion for class certification.[5] There, the court agreed with Progressive's arguments regarding the individualized nature of determining ACV and concluded that common issues of law and fact did not predominate over questions affecting only individual members. *Id.* at 7-8. But an inquiry into predominance under Rule 23 is a fundamentally different question from whether there are disputed issues of material fact under Rule 56 to support Plaintiff's claim based on his theory of liability.

Here, the question of predominance was resolved and the class was certified. The question now before the Court is whether there are disputed of issues of material fact regarding Plaintiff's breach of contract claim. There are. What remains are two competing theories of liability for which both parties have competing evidence and

---

[5] The same is true of Progressive's supplemental authorities (Dkt. 162), *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149 (3d Cir. 2025) and *Schroeder v. Progressive Paloverde Ins. Co.*, 24-1559 (7th Cir. July 24, 2025). Both the Third and the Seventh Circuit addressed the propriety of class certification, which has been settled here. To be sure, the Tenth Circuit declined an interlocutory review of the class certification order. Dkt. 130.

expert opinions. Progressive's arguments regarding the reliability of Plaintiff's experts' opinions go merely to the weight to accord those opinions which Progressive can explore on cross-examination.[6] *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1189 (D. Colo. 2012) ("A battle of the experts generally requires a trial and a trier of fact to resolve.") (citing *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005)).

Because the Court concludes there are issues of material fact that must be determined by a jury, the Court denies Progressive's request for summary judgment on Plaintiff's breach of contract claim.

## B.    Bad Faith Breach of an Insurance Contract

To recover under a common law theory of bad faith breach of an insurance contract, "the insured must prove that (1) the insurer's conduct was unreasonable, and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011). Progressive contends there is no evidence to support this claim. Dkt. 142, pp.31-33. In its Reply, it correctly points out that Plaintiff offered no arguments on this claim in his Response. Dkt. 156, p.17 n.4. It argues, therefore, that Plaintiff's "failure to challenge or rebut arguments on summary judgment warrant[] the grant of summary judgment." *Id.* (relying on *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1254 (10th Cir. 2017).

---

[6] Neither party filed motions under Rule 702 and the deadline to do so has passed.

Would that it were so simple.

As the Tenth Circuit, in *Perez*, explained, "in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate." 847 F.3d at 1254–55 (citing Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment ("Once the court has determined the set of facts—both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply—it must determine the legal consequences of these facts and the permissible inferences from them.")).

Progressive contends it is entitled to judgment in its favor because "Plaintiff has no record evidence indicating that Progressive acted unreasonably or in a manner inconsistent with standards in the insurance industry, let alone with reckless disregard for its unreasonable conduct." Dkt. 142, p.32. According to Progressive, the evidence shows that other valuation sources make similar downward adjustments to list prices. But as this Court has discussed, this argument reframes Plaintiff's theory of the case. Plaintiff does not contend it is unreasonable to use one valuation source over another, that is, choosing the Mitchell Reports over those prepared by Kelley Blue Book or the National Auto Dealers Association. Plaintiff's theory of liability is far narrower.

Plaintiff contends the unreasonable action was *applying the PSA* to the Mitchell Reports. This is because, according to Plaintiff, the PSA is based on

9

purposefully skewed data and is not only an inaccurate reflection of the cash values of used vehicles but is also arbitrary. *See* Dkt. 148, p.17. For these theories, Plaintiff does have supporting testimony and other evidence, which Progressive has disputed with its own evidence and arguments. *See generally* Dkt. 138, PSUMF. Consequently, even in the face of Plaintiff's perplexing decision to not address the matter directly, the Court concludes there are disputed questions of material fact precluding summary judgment on the claim of bad faith breach of an insurance contract.

\*   \*   \*

For the reasons shared above, the Court respectfully DENIES Progressive's request for summary judgment.

A Final Pre-trial Conference is set for September 4, 2025, at 9:00 A.M. in Courtroom C201 before U.S. District Judge S. Kato Crews.  No later than August 28, 2025, the Parties shall file the proposed final pretrial order.  A WORD version of the proposed final pretrial order should also be emailed to crews_chambers@cod.uscourts.gov. The Parties shall refer to this Court's Standing Order for Civil Cases when preparing the proposed final pretrial order. The Parties should be prepared to set a trial date within one to two months out from this conference.  Lead counsel who will try the case must be in attendance.

DATED: July 25, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge