**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
District Judge S. Kato Crews

Civil Action No. 1:22-cv-00878-SKC-TPO

MICHAEL CURRAN,
*individually and on behalf of all others similarly situated*,

      Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY,
*an Ohio Corporation*,

      Defendant.

---

ORDER DENYING DEFENDANT'S
MOTION TO DECERTIFY THE CLASS OR, IN THE ALTERNATIVE,
TO CERTIFY THE COURT'S ORDER FOR IMMEDIATE APPEAL

---

The Court presumes the parties' familiarity with the facts of this case and incorporates its previous factual recounting by reference. *See* Dkt. 50, pp.1-4, Dkt. 90, pp.2-5, Dkt. 163, pp. 1-3. In brief, when Defendant Progressive Direct Insurance Company (Progressive) deems an insured vehicle to be a total loss, its Auto Policy (Policy) warrants it will pay the lesser of:

    a.  the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

    b.  the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

    c.  the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or

    d.  the Stated Amount shown on the **declarations page** for that **covered auto**.

1

Dkt. 21-1, p.25. The Policy states "actual cash value" (ACV) is determined by "the *market value*, age, and condition of the vehicle at the time the loss occurs." *Id.* at p.26 (emphasis added).

While the Policy does not require a particular method for calculating the ACV or market value of vehicles deemed a total loss, it is undisputed that concerning Plaintiff and the Class's vehicles, Progressive relied on a Vehicle Valuation Report prepared by Mitchell International, Inc.'s WorkCenter Total Loss software (Mitchell Report). Dkt. 163, p.2. The Mitchell Report calculates ACV by finding comparable vehicles in the local market area, adjusting the advertised prices to account for equipment, mileage, and vehicle configuration, and applying a "Projected Sold Adjustment" (PSA) to the comparable vehicles. Progressive's use of the PSA is the crux of the parties' dispute. *See generally* Dkt. 9.

Plaintiff contends the PSA is arbitrary because it is purposefully skewed to result in a reduction to the comparable vehicles' value. Dkt. 163, pp.2-3. According to Plaintiff and the Class, therefore, in utilizing the PSA, Progressive breached its contractual obligation to calculate the ACV based on market value, which resulted in payments lower than ACV. *Id.* p.3.

On December 18, 2023, following Plaintiff's Motion (Dkt. 57) and full briefing on the question, District Judge Nina Y. Wang[1] certified the following class:

---

[1] District Judge Wang was the original presiding judge in this matter. This case was transferred to the undersigned on January 19, 2024. Dkt. 103.

2

All persons who made a first-party claim on a policy of insurance issued by Progressive Direct Insurance Company to a Colorado resident where the claim was submitted from April 12, 2019, through December 18, 2023, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

Dkt. 90, p.21.

The undersigned later denied (Dkt. 163) Progressive's Motion for Summary Judgment (Dkts. 142, 143). Progressive next filed the present request to decertify the class or, in the alternative, certify the question to the Tenth Circuit Court of Appeals. Dkt. 171. The Court has carefully reviewed the Motion and related briefing, the evidence, the relevant law, and the entire case file. No hearing is necessary.[2] For the following reasons, the Motion is DENIED.

## ANALYSIS

Rule 23 provides that an order granting or denying class certification may be altered or amended before final judgment. Fed. R. Civ. P. 23(c)(1)(C). While the parties dispute which legal standard should apply to a request for decertification, the Court need not resolve the question because even under the most lenient review, the Court concludes the Rule 23 requirements remain satisfied.

As was the case with its original opposition to class certification, the heart of Progressive's decertification arguments goes to questions of predominance. In their

---

[2] Progressive's request for a hearing or status conference to discuss this issue (Dkt. 204) is denied as moot.

Motion and Notices of Supplemental Authorities, Progressive relies on several circuit court opinions (none from this circuit) issued after Judge Wang's original order and argues that the reasoning in these opinions warrants decertification in the instant case. These circuit courts concluded that—in similar circumstances—individual issues would predominate over the determination of whether the insurance company breached its contractual duties and the calculation of damages. *See generally* Dkts. 171, 185, 196, 200, 201. But these opinions are not binding on this Court. And the reasoning in these cases is no different from the arguments Progressive made, and Judge Wang rejected, in its opposition to class certification.

For example, in a Notice of Supplemental Authority, Progressive relies heavily on the Sixth Circuit's reasoning in *Clippinger v. State Farm Auto. Ins. Co.*, 173 F.4th 817 (6th Cir. 2026). There, like here, the plaintiff challenged her insurance company's application of a "Typical Negotiation Adjustment" (TNA) but otherwise did not object to State Farm's calculation of her vehicle's ACV.[3] Although the district court certified a class, the Sixth Circuit, sitting *en banc*, reversed and concluded certification was inappropriate. The majority concluded that individual issues would predominate because a determination of ACV would be fact-intensive and require the jury to consider for each class member's car "the year, make and model, mileage, options, and overall condition of the vehicle before an accident." *Clippinger*, 173 F.4th at 832.

---

[3] State Farm worked with a company called Audatex that created reports regarding the ACV of totaled vehicles in a manner like that used by Mitchell. State Farm's TNA is akin to the PSA.

The majority agreed with State Farm that—given these factors and the various methods for calculating ACV—even where the TNA was applied, some members of the class may have nevertheless been paid the ACV. In that event, the majority concluded there could be no breach of contract, and thus, the class certified by the district court failed the predominance factor. But the Court is not persuaded by the majority's analysis in *Clippinger* and finds the facts here distinguishable.[4]

As this Court stated in its Order denying summary judgment, the "heart of all the arguments stem from the fundamentally different ways that [Plaintiff] and Progressive view this case." Dkt. 163, p. 5 (quoting *Brown v. Progressive Mountain Ins. Co.*, 716 F. Supp. 3d 1349, 1352-53 (N.D. Ga. 2024)). Both the undersigned and Judge Wang have noted that Progressive's arguments regarding certification hinge on reframing Plaintiff's theory of the case. *See* Dkt. 90, pp.17-18; Dkt. 163, p.9. Like State Farm in *Clippinger*, Progressive argues that it couldn't have breached the Policy unless it paid the class members less than a vehicle's ACV. Dkt. 171, pp.8-113. It contends, therefore, that even assuming the PSA is improper, if it does not drop a settlement payment below the vehicle's ACV, there is no breach. Given the facts, Plaintiff's theory of the case, and the valuation methodology used by Progressive to

---

[4] To be sure, the dissent in *Clippinger* noted that the majority's focus on a purported need to consider each car's individual factors, overlooked the fact that "Audatex's model already considered all these factors." *Clippinger*, 173 F.4th at 847 (Gibbons, J., dissenting). And the plaintiff in *Clippinger* agreed that the Audatex methodology was sound but for the TNA. In reversing the certification, the *Clippinger* majority inherently adopted State Farm's framing of the issue over that presented by the plaintiff.

arrive at ACV, the Court is not persuaded by Progressive's rationale or the out-of-circuit cases it cites.

Consideration of Progressive's valuation methodology used in the Mitchell Report is helpful to the analysis. Progressive's valuation method is a five step process:

**Step 1 - Locate Comparable Vehicles**
Locate vehicles that are the closest match to the loss vehicle in the same market area [utilizing] consumer-based vehicle sources along with inventory directly from Dealerships [and] [w]hen available . . . sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**
Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments
- *Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).*
- Vehicle Configuration Adjustment- an adjustment for differences in configuration between the comparable vehicle and the loss vehicle (e.g. differences in trim).
- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.
- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**
The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate loss Vehicle Adjustments**
There are four types of loss vehicle adjustments:
- Condition Adjustment:
  Adjustments to account for the condition of the loss vehicle prior to the loss.
- Prior Damage Adjustment:
  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.
- After Market Part Adjustment:

> Adjustments to account for any after market parts present on the loss vehicle prior to the loss.
> · Refurbishment Adjustment:
>   Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.
>
> **Step 5 - Calculate the Market Value**
> The Market Value is calculated by applying the loss vehicle adjustments to the base value.

Dkt. 70-20, p.9 (bold in original, italics added). As the Court continues to understand Plaintiff's argument and theory of the case, Plaintiff contests *only one facet* of the five-step valuation process, that being application of the PSA at Step 2—by removing that single component from the five-step equation, the Mitchell Report otherwise appropriately calculates ACV. *See* Dkt. 57, p.7 ("Other than the PSA, Mitchell's method is consistent with this standard and documents a detailed, sound appraisal of each loss vehicle that Progressive presents to the insured as ACV.").

Based on this theory and considering the valuation methodology applied to Plaintiff and the Class, the Court is persuaded by the analysis in *Reynolds v. Progressive Direct Ins. Co.*, 346 F.R.D. 120, 133-34 (N.D. Ala. 2024). There, the district court concluded Progressive's position—which is the same made here—was a "straw-man argument" because the plaintiffs and class did not challenge "whether a correctly calculated PSA yielded an incorrect ACV." *Id.* Like Mr. Curran, the plaintiffs in *Reynolds* argued that application of the PSA is categorically invalid. *Id.* (Under the Policy, Progressive is required to determine ACV "'by the *market value*, age, and condition of the vehicle at the time the loss occurs,' but if [the plaintiffs] are right, then Progressive determines ACV *not by market value*, but by 'an artificial,

7

downwardly skewed, and deflated *'market' of its own invention.'"*) (emphasis added).
This theory—that applying the PSA at all is a de facto breach of contract—may be resolved on a class-wide basis.

Progressive continues to argue that ACV can be calculated in many ways, and therefore, it may have indeed paid class members ACV even when applying the PSA. But no one disputes there are multiple ways to calculate the ACV for any given vehicle. That is a defense, however, to Plaintiff's theory that the Mitchell Report and its five-step valuation method *without* the PSA accurately represents the ACV of the total loss suffered by him and members of the class. *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-cv-175-TCB, 2023 WL 7219499, at *8 (N.D. Ga. Aug. 3, 2023) ("Progressive's defense that it indeed paid the ACV for the vehicles—at least as calculated by KBB and NADA—even with the PSA applied, is just that: a defense. It is a defense to the argument that the application of the PSA necessarily breaches the policy."). Both parties have evidence to support their positions, and it is not for this Court to resolve those factual disputes on this Motion or any other.[5] *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1189 (D. Colo. 2012) ("A

---

[5] This Court has put no limitation on the theories Progressive may raise in its defense or evidence it may utilize at trial. If Progressive wishes to refute the accuracy of its Mitchell Reports or argue that applying the PSA is a valid means for determining market value, it is free to do so. And Progressive may still present individualized valuation evidence in later damages proceedings if necessary, although the Court observes that the Mitchell Reports themselves already contain individualized valuations for the subject vehicles at Step 4. Thus, there is no merit to Progressive's suggestion that certifying this class will prevent it from pursuing its desired defense(s).

battle of the experts generally requires a trial and a trier of fact to resolve.") (citing *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005)).

In this case, Progressive did in fact use the Mitchell Report to determine the ACVs of the total-loss vehicles. Plaintiff and the class (whether they pursue their claims individually or as a class) intend to use this evidence—the Mitchell Reports—to support their theory that but for inclusion of the PSA, the Mitchell Reports otherwise appropriately calculate ACV, and therefore, inclusion of the PSA in the five-step valuation process breaches the Policy. *See, e.g., Volino v. Progressive Cas. Ins. Co.*, No. 21 CIV. 6243 (LGS), 2023 WL 2532836, at *9 (S.D.N.Y. Mar. 16, 2023) ("Progressive is free to dispute Plaintiffs' proof of 'actual cash value' when it is asserted on behalf of tens of thousands of insureds just as when it is asserted for only one. But Progressive can hardly complain that the methodology Plaintiffs would impose on them is the one Progressive chose and developed.").

The jury, of course, is under no obligation to accept Plaintiff's theory or evidence at trial. But the question on class certification "is not whether the factfinder would be persuaded by Plaintiffs' case, but whether common issues predominate over individualized ones." *Reynolds*, 346 F.R.D. at 134. "The fact that the jury might not be persuaded by Plaintiffs' common proof does not mean Plaintiffs lack common proof." *Volino*, 2023 WL 2532836, at *9. If the jury rejects Plaintiff's common proof that the Mitchell Report minus the PSA represents ACV, it would not result in an explosion of individual issues—it would instead end the case summarily.

* * *

For the reasons shared above, the Court respectfully DENIES Progressive's Motion to Decertify the Class.

Furthermore, because the Tenth Circuit already denied Progressive's request to review this case and Judge Wang's prior certification of the class, the Court declines to certify this matter for an interlocutory appeal finding Progressive has not met its burden under 28 U.S.C. § 1292(b). The Court respectfully DENIES Progressive's request to certify the question to the Tenth Circuit.

This case remains set for a jury trial to begin on June 22, 2026.

DATED: May 27, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge